### GOULET *v.* ASSELER *et al.*

The mortgagee of chattels which have been sold under execution against the mortgagor, who was in possession and entitled to the possession until default, cannot maintain an action, in the nature of trespass or trover, for the value of the goods.

The facts that the sale was without notice of the rights of the mortgagee: that the property was such as to have no value except for actual consumption: that it was difficult or incapable of identification; and that it was distributed among various purchaser, at most, authorize damages to the plaintiff for the injury to his lien, and not, as of course, for the entire value.

*It seems,* that the mortgagee is entitled, in such case, under a complaint properly framed for that purpose, to recover damages for such injury to his reversionary interest in the mortgaged chattels as the evidence may establish.

APPEAL from the Superior Court of the city of New York. Action for taking, selling and converting to the defendants' use a quantity of wines, liquors, cigars and bar furniture, the stock and utensils of a restaurant. The plaintiff made title under a chattel mortgage executed to him by M. Caussidiere and E. Bonnier; and the defendants justified under a judgment and execution against the mortgagors, in which judgment they were the plaintiffs, the execution being levied on the property by their direction. The mortgage was dated March 19, 1855, and purported to be for the security of $1,200, payable in one year from that date. It contained the following clause: "And until default be made in the payment of the said sum of money, we [the mortgagors] are to remain and continue in the quiet and peaceable possession of said goods and chattels, and in the full and free enjoyment of the same." The principal part of the property, in value, was wines, liquors and cigars. The defendants were prosecuting their action when the mortgage was executed, and obtained judgment shortly afterward. The officer sold the goods on the execution on the 27th April, 1855. The sale was in different parcels, and the goods were delivered by the officer to the respective purchasers, and the proceeds were paid to the defendants. No mention was made of the mortgage at the sale, though the defendants had been informed of it after the levy and before the sale took place. It did not appear that the defendants purchased any of the goods at the sale. The action was commenced after the debt mentioned in the mortgage became payable; and the plaintiff had, after that time and before bringing the suit, demanded the goods of the defendants. The character of the complaint and of the evidence sufficiently appears from the following opinion.

The defendants, on the trial, insisted that the goods were subject to levy on execution against the mortgagors, and that

Goulet *v.* Asseler.

the action could not be sustained.   The jury were instructed to assess the value of the goods and to give their verdict for the plaintiff for that value, subject to the opinion of the court, with power to dismiss the complaint.   The value was fixed by the jury at $850, and the court at general term gave judgment for the plaintiff for that amount.   The defendants appealed.   The case was submitted without oral argument, on printed briefs.  .

*John Sessions*, for the appellants.

*John Cook*, for the respondent.  .

SELDEN, J.   If the plaintiff has any legal remedy for the injury of which he complains, it is clear that that remedy has not been properly pursued in the present case, and that the judgment therein cannot be sustained consistently with the well established principles of the common law, and the repeated decisions of this court.   The difficulty in the case, and the error of the court below, will be most readily seen and appreciated by referring to some of the distinctions between those forms of action which the Code has abolished.   It can hardly be claimed that, prior to the Code, an action of trespass or trover could have been maintained, either against the officer or the plaintiff in the execution, under the circumstances here disclosed.   The case would have fallen directly within the principles of the case of *Gordon* v. *Harper* (7 Term R., 9), and the subsequent cases of that class which have never been departed from, either in England or in this country.   If any action would have lain before the Code, it could only have been an action founded upon the special circumstances of the case, setting forth the injury to the contingent interest of the plaintiff in the property, and claiming damages for such injury.

While, however, in such an action, the plaintiff would have avoided the effect of the technical rule that, in order to recover in trespass or trover, he must show that he had either the actual possession or the right of the possession at the time of the

alleged taking or conversion, he also, supposing that the action could have been maintained, would have imposed upon himself the necessity of proving, specifically, the damages which he had sustained. In trespass and trover, before the Code, the plaintiff recovered, if at all, upon the ground that he was the owner of the property in controversy. The measure of damages, therefore, in all such cases, was the value of the property taken or converted. Although it appeared that the plaintiff held the title as mere security for a debt, and that his debtor was abundantly able to pay, so that his actual loss was nothing, his recovery, in cases where he recovered at all, was nevertheless for the full value of the property, provided that did not exceed the amount of his lien. In a special action on the case, on the contrary, the plaintiff could, under no circumstances, recover more than the damages shown to have been actually sustained. He must prove to what extent his security was impaired, by showing whether the debtor was or was not responsible, and whether or not it was still in his power to follow and enforce his lien against the property.

Although the Code has abolished all distinction between the mere forms of action, and every action is now in form a special action on the case, yet actions vary in their nature, and there are intrinsic differences between them which no law can abolish. It is impossible to make an action for a direct aggression upon the plaintiff's rights by taking and disposing of his property, the same thing, in substance or in principle, as an action to recover for the consequential injury resulting from an improper interference with the property of another, in which he has a contingent or prospective interest. The mere formal differences between such actions are abolished. The substantial differences remain as before. The same proof, therefore, is required in each of these two kinds of actions as before the Code, and the same rule of damages applies. Hence, in an action in which the plaintiff establishes a right to recover, upon the ground that the defendant has wrongfully converted property to the possession of which the plaintiff was entitled at the time of the conversion, the proper measure of damages still

Goulet *v.* Asseler.

is, the value of the property; while in an action in which the plaintiff recovers, if at all, upon the ground that the defendant has so conducted himself in the exercise of a legal right in respect to another's property, as unnecessarily and improperly to reduce the value of a lien, which the plaintiff could only enforce at some subsequent day, the damages must, of course, depend upon the extent to which that lien has been impaired.

If we apply these principles to the present case, the error in the judgment under review becomes apparent. The complaint is, in substance, the same as a declaration in trover, under the former system of pleading. It is true, that it sets out the mortgage as well as the judgment and execution obtained by the defendants, and the proceedings under them; but the gist of each of the counts is, that the defendants have taken the property of the plaintiff, and converted and disposed thereof to their own use. The form of the complaint in this respect would be of no importance, provided the proof had been such as to entitle the plaintiff to the judgment rendered. This court will not reverse a judgment simply because the case made by the evidence varies from that set forth in the complaint, where, as in this case, no objection was taken on that account at the trial. If it appears that the proof was sufficient to entitle the successful party to the judgment actually given, such judgment will be sustained. Here, however, the proof could, at most, only authorize the plaintiff to recover the consequential damages resulting to the contingent interest under the mortgage; while the damages were assessed and the judgment rendered upon the assumption that he was the owner of the property and entitled to the immediate possession.

The distinction taken by the Superior Court between this case and that of *Hull* v. *Carnley* (1 Kern., 501, and *S. C.*, 17 N. Y., 202), upon the ground that here the sale was in parcels and to different purchasers, is entirely insufficient to support the judgment. Even conceding this to have been wrongful, and a violation of duty on the part of the officer, still it could only entitle the plaintiff to recover damages for the injury to his lien, and not the entire value of the property. The

objection that he had neither possession nor the right of possession at the time of the conversion, would not be removed. The judge, therefore, was clearly wrong, in directing the jury to assess the value of the property, without any proof as to the actual extent of the injury sustained.

It is unnecessary to determine whether a recovery could be had upon any other principle in such a case. This question has never yet been presented to or passed upon by this court. It was held in *Hull* v. *Carnley* (*supra*), that property situated like that in this case was liable to levy and sale upon execution against the mortgagor; and that whether the sale was general without notice to the purchaser of the lien of the mortgagee, or was specially restricted to the right of the mortgagor subject to the lien, nothing but the interest of the latter would pass by the sale. It followed, that the mortgagee would, after default, have the same right to pursue and take the property, notwithstanding the sale, as if it had remained in the hands of the mortgagor; and inasmuch as it did not appear that there would have been any greater difficulty in enforcing the lien of the mortgage after the sale, than if the same had not occurred, the conclusion was inevitable that no injury was shown and no action would lie. The sheriff had a right to sell the interest of the mortgagor. The effect of the sale was to pass that interest, and nothing more. No rights of property, therefore, were violated.

It is true, the sheriff was apprised of the lien at the time of the sale, and omitted to disclose it; but of what consequence is that, unless some one was injured by the omission? There would perhaps be a presumption of injury to the purchaser in such a case; for which an action would lie. It was held in *Peto* v. *Blades* (5 Taun., 656), that the law raises an implied promise by a sheriff selling goods taken in execution, that he does not know that he is destitute of title to the goods. But there can be no presumption of injury to the mortgagee, where the sale is made, and the property passes, to a single purchaser. In *Hull* v. *Carnley*, although the sale was in parcels, still all the parcels were pur-

Goulet *v.* Asseler.

chased by and delivered to a single individual; and hence, the question as to the effect of a sale in parcels to different individuals, and without disclosing the existence of the lien, did not arise, and the court expressly reserved its opinion upon such a case. It may be necessary, ultimately, to settle this question in the present suit, but as its determination is not essential to the disposition of the case as now presented, and as there is not a perfect unanimity of opinion in this court upon the subject, it is deemed expedient to leave the point to be settled hereafter. The judgment must be reversed and there must be a new trial, with costs to abide the event.

All the judges were for reversal upon the preceding opinion, except COMSTOCK, Ch. J., and DENIO, J.

DENIO, J. There is no material distinction between the facts in this case and those in *Hull* v. *Carnley*, which has been twice before us. There are some circumstantial differences, but none which affect the principle of the action.

For instance, the defendants in that case were the officer and the judgment creditor, while here the creditors alone are sued. There, the property, though sold in parcels, was all purchased at the sale on the execution by one person, while, in the present case, there was more than one purchaser, but how many does not appear. The property in question in *Hull* v. *Carnley*, was a printing press and apparatus, while here it was a quantity of liquors and cigars. If the question related to the *bona fides* of the mortgage, it would be a circumstance of some weight that the property was of a kind which literally perishes in using; as it would be difficult to conceive a motive for leaving such property in the hands of the mortgagor unless it were to enable him to sell it out in the course of his business, and protect it in the meantime against the executions of his creditors. In respect to property which may be profitably used, it may be honestly left in the possession of the mortgagor from motives of humanity, or to enable him by its use to acquire the means of satisfying the debt. But no question of fraud was litigated in this

case, and, moreover, the distinction, if material, would be unfavorable to the plaintiff. Property in the possession of the mortgagor for a time certain, fixed by the terms of the mortgage, is subject to levy, whatever may be its quality. With the right of possession until default the purchasers acquire the right of redemption, which may be of great value, though the use of it during the time of credit would not often, and certainly not in this case, be worth anything. In *Hull* v. *Carnley*, we held that chattels which are mortgaged may be seized, and the interest of the mortgagor therein sold on an execution against him where they are in his possession, and he, at the time of the seizure and sale is, by the terms of the mortgage, entitled to their possession for a definite period. It was also decided that the officer might sell the property generally and deliver possession to the purchaser without in any way recognizing the lien of the mortgage. (1 Kern., 501.) The judgment which had been rendered for the plaintiff was reversed, and the case was again tried according to the law as thus settled; and the second judgment was, of course, in favor of the defendant. Upon a second appeal to this court the question was again elaborately argued before all the judges. In the opinion of the court, pronounced on that occasion, the principles of the former judgment were unanimously affirmed and judgment was given against the appellant. On the second trial it had appeared that the different parcels were sold separately, though one person purchased all the parcels; which led the judge who prepared the opinion to remark that the difficulty in the way of maintaining the action was just as formidable in the case of a sale by retail as by wholesale. "It is not," he said, "the act of the sheriff, but the relation which the mortgagor himself sustains to the property, which prevents him from maintaining the action."

The principles thus decided were by no means new doctrines in this State. In *Van Antwerp* v. *Newman* (2 Cow., 543), a judgment debtor was possessed of goods which he had hired of the owner for a term, at the expiration of which they were to be surrendered to him. The defendant, as sheriff, sold them

absolutely on the *fi. fa.* The general owner sued him in trover, adding a count in case for an injury to his reversionary interest; and he justified under the execution. The Supreme Court held that the plaintiff could not recover. After determining that the interest of the debtor in the property was the subject of levy, according to the English cases, referred to in *Hull* v. *Carnley,* the court considered the effect of a sale absolute in its terms upon the rights of the ultimate owner. If it divested those rights he would be entitled, as it was supposed, to a remedy; but the court held that the plaintiff was not by the sale divested of his property in the goods, and that, therefore, he had no right of action.

There is another case in the late Supreme Court, precisely in point, reported since *Hull* v. *Carnley* was decided, though adjudged in 1843. The debtor had mortgaged goods to secure the payment of two promissory notes, one of which was past due and the other payable at a future day, and he was to continue in possession until default. Before any default had happened, the defendant caused the goods to be seized on an attachment against the mortgagor. The mortgagee brought replevin in the *cepit,* and it was held by this court, Judge BRONSON giving the opinion, that he could not recover, on the ground that he neither had possession nor the immediate right of possession. (*Carpenter* v. *Town,* Lalor's Supplement to Hill and Denio, 72.)

The Superior Court appears to have given the judgment under review upon the supposition that the English courts had held a different doctrine from that established here, in the cases which have been referred to. If this were the case, it would not, in my opinion, afford a reason for departing from the course of adjudication in our own courts, especially since it has been repeatedly confirmed by the court of final review in which we are sitting.

But it is, I think, a mistake to suppose that the courts in England have laid down a different rule. In *Bradley* v. *Copley* (Mann., Gr. and Scott, 685), decided in 1845, it appeared that one Boulton h d executed a chattel mortgage, to the plain-

tiffs, of certain tavern furniture to secure the payment of the purchase price thereof, he having bought the property of the plaintiffs. The mortgage was to be void if Boulton should pay the debt, with interest, on demand; it was provided in the mortgage that until default Boulton should hold, possess and enjoy the furniture, &c., without any hindrance or denial from the mortgagees. Boulton afterwards confessed a judgment, upon which an execution was issued to the defendant, as sheriff. Before the seizure, the plaintiffs gave the defendant and the judgment creditor notice that the property belonged to them; but the defendant, notwithstanding, sold it at auction under the execution, upon which the plaintiffs brought this action of trover, adding a special count in case which, however, was not adverted to in the opinion. TINDAL, Ch. J., said: "Ever since the case of *Gordon* v. *Harper* (7 T. R., 8), I take the rule to have been that, to enable a party to maintain trover, he must have the right of possession as well as the property in the goods sought to be recovered. That case has been followed by many; and I am unable to distinguish it from the present case, except in this, that there the right of the landlord to the possession of the goods was postponed for a certain and definite time, whereas, here the goods were to revert to the plaintiffs at an uncertain time viz.: on default of Boulton in paying the debt on demand. When the conversion complained of took place, the plaintiffs were not in a situation to require possession of the goods; I, therefore, think the case is governed by *Gordon* v. *Harper*, and that the plaintiffs are not entitled to recover." The other judges followed in remarks to the same effect.

The case relied on in the opinion of the Superior Court, is *Fenn* v. *Bittleson* (2 Wels., Hurl. and Gor., 152; reported, also, in 8 Eng. L. and Eq. R., 485). That was likewise the case of a personal mortgage. The mortgagor had become bankrupt, and the goods were sold absolutely by the assignees under the bankrupt act. The mortgagee recovered. If these assignees stood in the same legal position with creditors enforcing their executions, or as officers selling under an execution,

the facts would have been similar to those of the case before us, and of the cases which have been cited. But it was precisely because they did not occupy that position, that the court held that the sale was a conversion. It was declared that the act of the assignees was the same as though it had been the act of the mortgagor himself. The contract between the parties, the court said, "never meant to authorize Malpas [the mortgagor], his executors or administrators (not assigns), to do more than use the chattels, and not to give the use to a third person, certainly not for a longer period than his own term. The transfer of the property absolutely to a stranger was, therefore, unquestionably wrong, and it operated as a disclaimer of tenancy at common law." In another part of the opinion it is said that, if the goods "had been simply taken by a *third person* out of Malpas' custody during the term stipulated for, no action of trover could have been maintained, because the plaintiffs would have had no present right of possession. The cases of *Gordon* v. *Harper* and *Bradley* v. *Copley* would certainly have applied." We are not concerned to inquire into the accuracy of the distinction upon which it was held that the sale by the assignees was the same as though it had been made by the mortgagor himself. It is sufficient for the present purpose that the case was decided upon that theory, and that the sale by Malpas' assignees was considered an act of disloyalty by Malpas himself towards the parties who held the mortgage, which, *ipso facto*, put an end to his right of possession. This view is made entirely clear by the express approval by the court of *Gordon* v. *Harper* and *Bradley* v. *Copley*, in each of which cases the goods were taken and sold on execution against the party entitled to the temporary possession, without any acknowledgment of the ultimate property of the plaintiffs.

It has been suggested that, if neither trespass nor trover would lie against the defendant, yet an action on the case could be sustained for an injury to the plaintiffs' reversionary interest. It may be conceded that a party may so conduct himself in the enforcement of his legal rights as to render himself liable

to a party aggrieved, as it is clear an officer may execute process against property in such a way as to wrongfully oppress and injure a party, though a direct action for wrongfully taking the property would not lie. But there are several objections which, to my mind, render it impossible to support this judgment upon such grounds. In the first place, the action is brought for wrongfully converting the property in question. The complaint assumes that the plaintiff was the owner and entitled to the possession, and that the defendants, without any authority, but wholly of their own wrong, have caused it to be sold. There is no allusion in the complaint to any process by which it could be interfered with or to any abuse or misconduct of the nature suggested. There is a great dissimilarity between converting one's goods, and oppressively executing legal process against them, by which he is injured. The scope of such actions is wholly different. Then the case was not tried on any such theory. The plaintiff sought to recover as for property of his, wrongfully taken and converted, and not for consequential damages for an injury to interests in reversion. The jury were directed to assess the value of the property taken. By this was meant its value when taken, and not damages for a supposed disturbance of rights in reversion; and this was the measure of the damages actually given. Moreover, there was not a scintilla of proof that the plaintiff had sustained any damages of the nature suggested. If the defendant had no right to levy the execution upon the property, and it belonged to the plaintiff, the defendants were trespassers, and the measure of damages was the value of the property; but if the wrong was the selling in parcels and not giving notice to the purchasers of the existence of the mortgage, then the damages were to be assessed upon different considerations. The responsibility of Bonnier upon his personal contract was one. If the money was collectable notwithstanding the loss of the collateral security, the damages would have been nominal. But if he were insolvent, the plaintiff's only remedy was upon the mortgage. Then the degree of difficulty and the nature and extent of the impediment in enforcing it against the mortgaged pro-

Goulet *v.* Asseler.

perty at the expiration of the time of credit, were the material circumstances which would determine the measure of damages. But there was no evidence upon any of these points; and none was given, because no such cause of action had been thought of. Finally, the cases which have been referred to, show that no recovery upon such grounds could be sustained. In *Van Antwerp* v. *Newman*, the goods were sold on execution as in this case, without any recognition of the general ownership of the plaintiff, and there was a count in the declaration for an injury to the plaintiff's reversionary interest; but it was held that the action did not lie. In the case of *Hull* v. *Carnley*, the material facts were identical, as has been shown, with the present case, and the judgment was for the defendant. I conceive that there can be no legal injury to the right of the general owner, unless his reversionary interest is displaced or divested by the sale of the goods on execution against a party entitled to the temporary possession. But it is clear, on reason and authority, that such interest is not displaced or affected. It may be more or less available after a sale, according to the residence of the purchasers, the place where the goods are afterwards kept, or other special circumstances. But the right of the reversionary proprietor remains the same. No doubt it would conduce to convenience that the purchasers should be informed of the limited nature of the interest they were purchasing, in order that they should not ignorantly do any act which should prejudice the mortgagee; but it would be quite easy for the latter to avoid that danger by giving the notice himself at the time of the sale. He would naturally have knowledge of the fact, which the officer or judgment creditor would not be likely to have.

My opinion, in conclusion, is that the question sought to be made by the respondent is not an open one in this State, or in England, and especially that in this court it has been put at rest by repeated concurring judgments upon this precise point. I am, therefore, in favor of reversing the judgment of the Superior Court, and of giving judgment for the defendant for

a dismissal of the complaint, according to the provision in the case as settled.

COMSTOCK, Ch. J. (Dissenting.) Where a mortgagor of goods remains in possession, and has some definite right to the possession, they may be sold on execution against him; and the sheriff is not liable to the mortgagee for the mere levy and sale, although he sells without any reservation of the rights claimed under the mortgage. So much was decided in *Hull* v. *Carnley*, which was twice before this court. (1 Kern., 501; 17 N. Y., 202.) But that case went no further than the precise proposition just stated. The essential ground of the decision was, that the mortgagor's possessory right could be seized and sold on process in favor of his creditors: that the purchaser would take his situation and rights in respect to the property: that the lien of the mortgage would remain undisturbed by the sale, and even by the transfer of possession to the purchaser; and that the remedies of the mortgagee would not be impaired or affected by the sale and delivery. In that case it appeared that the property, consisting of ponderous articles, was all purchased at the execution sale by one person, although it was bid off in parcels; and that it all remained in the purchaser's possession, or in that of the mortgagor under a lease from him, even down to the time of the trial. (1 Kern., 502; 17 N. Y., 203, 205.) It was, therefore, evident that the mortgagee sustained no actual injury by the levy and sale. When his right to the possession accrued according to the condition of the mortgage, he had the same right to take the goods which he would have had if they had not been levied upon or sold; and there was no practical embarrassment in the way of exercising that right. Another difficulty in that case was stated to be, that neither trespass nor trover would lie, under the former system of practice, where the plaintiff, at the time of the alleged trespass, or conversion had not the possession of the goods or right of possession. (Per DENIO, J., 1 Kern., 509; PRATT, J., 17 N. Y., 204.) The action, it is true, was brought under the new practice (Code), but it was very properly considered that

the principles of law applicable to the question had not been changed, and therefore that the plaintiff could not in any form complain of a seizure and sale merely where he had no right to the possession of the property.

But I now proceed to observe that at common law an action on the case might be brought where, for the technical reason which has been mentioned, trespass, or trover would not lie. For every legal wrong there was some appropriate remedy. A person having only a reversionary interest in chattels or a mere lien without possession or right of possession could not bring trespass or trover (7 Term. R., 9), because those were not in form the appropriate remedies. But if he suffered an actual injury, in respect to his reversionary or other special or peculiar interest, the law did not leave him without redress. An action on the case would be founded on the peculiar interest which the plaintiff had in the property, and the wrong done to him in respect to that interest. Thus the owner of a horse may hire him out on bailment for a definite period of time. If a trespasser or a thief should take and convert the chattel before the bailment had expired, the owner could not sue in trespass or trover; but no one will doubt that he might have an action on the case, founded on his reversionary interest. Either the general owner or the bailee could sue in such a case. The latter could maintain trespass or trover founded on the possession, and he could recover entire damages, holding the same in trust for the owner. But that consideration only places in a stronger light the right of the reversioner to sue for the injury to himself in a case where the taking and conversion are lawful as to the person having the present or possessory right. In such circumstances, for example, where, as in the present case, the goods are taken and sold under a legal process against the party in possession, no one is injured except the reversioner; and however gross and manifest the injury may be to his interest, the law affords no remedy except by an appropriate action in his name. No one else can represent him because there is no one else to complain even of a technical trespass. He may, therefore, sue to redress

any actual wrong which he has suffered. At the common law his remedy would be by action on the case, and now it must be by an action of the same nature.

This doctrine, which I persuade myself is a very plain one, was not applied in *Hull* v. *Carnley*, because in the circumstances of that case there was no room for its application. The mortgagee, who was entitled to the possession after the expiration of a certain period, received no injury from the sale of the goods under execution against his mortgagor. When that case was laid before the court, Judge PRATT, who delivered the opinion, seemed to regard the action as in trespass or trover, although it was brought under the new practice. But he observed that if an action for the consequential damages to the mortgagee had been brought, it could not have been sustained, "for the reason that although the property was sold in parcels, it was all bid in by one man and remained in the possession of the mortgagor (under a lease from the purchaser) at the time of the commencement of the suit." "It is manifest, therefore," the judge added, "that he sustained no actual damage." Nothing further need be said in order to show that the decision is no authority for holding that the mortgagee, where it is not manifest that he has sustained no injury, may not sue for the wrong when the mortgaged goods are thus sold in hostility to his right.

We come now to the facts of this case as they have been found in the court below. The property in question consisted of liquors of various kinds, cigars and a variety of other articles usually kept in a city restaurant. It was property difficult to be followed and identified, and liable to be speedily consumed. The sale was hostile to the plaintiff's mortgage, of which the defendants, who directed the proceedings, had notice. The defendants also received the proceeds of the sale. The goods were sold in parcels to different purchasers, and were delivered to them accordingly. Upon these facts the Superior Court held, " that although the defendants had a right to seize the property under their execution and to sell the mortgagor's interest in it, and deliver it in bulk to a purchaser of such

Goulet *v.* Asseler.

interest, they had no right with a knowledge of the mortgage to sell the property in parcels out and out, to different purchasers, and deliver to each purchaser the separate parcels so bought by him, and thereby destroy the value of the plaintiff's security." I think this was a correct view of the case. It not only does not appear that the plaintiff sustained no injury, but the circumstances justify the opposite presumption. Who and how many the purchasers were we know not. Their very names were probably unknown, the sale being at auction. The goods were thus dispersed, no one could tell where, and if not in fact consumed before the plaintiff's right of possession accrued, they were nevertheless liable to consumption and loss. I think that in all cases of this nature, where the mortgaged property is sold and delivered in parcels to different purchasers, a presumption of injury to the mortgagee arises, the sale being without any recognition of his rights. In this particular case there can be little doubt that the proceedings resulted in the total loss of the plaintiff's lien. The law is not so unreasonable as to afford no remedy for such a wrong.

We have been referred to the manner in which the plaintiff's case is set forth in his complaint. The plaintiff's title and interest under his mortgage are therein disclosed, and it is there alleged in substance that the defendants, knowing of the mortgage and intending to injure the plaintiff, wrongfully took the goods and absolutely sold and converted the same to their own use. The authority under which they sold, and the special circumstances of the sale, showing how the injury to the plaintiff was produced thereby, are not set forth. I think therefore there was some defect in the statement. But this defect was amendable before or after judgment, and it is still amendable. (Code, § 173; *Lounsbury* v. *Purdy*, 18 N. Y., 515.) Again, the questions made at the trial arose upon the facts as proved, and the ground was not taken that the complaint was not adapted to the case which the evidence disclosed.

It is also now urged that for aught that appears the mortgagors were able to pay the debt, and consequently that the plaintiff may not have been injured by the loss of his lien.

But as this point was not suggested at the trial, we are not required to consider the question whether the insolvency of the mortgagors was a necessary part of the plaintiff's case. I think therefore that the judgment ought to be affirmed. A majority of my brethren however, are of opinion that a new trial should be granted for the reasons assigned by Judge SELDEN, and the question whether the plaintiff can maintain the suit for the injury sustained by him, according to the principles of this opinion, is left undetermined.

Judgment reversed and new trial ordered.