The plaintiff's mortgage was not due, and the mortgagor had a continuing right of possession at the time of the seizure of the goods in question by the defendants Monaghan and Cavanagh, and also at the time when they caused the property to be sold at auction. I think, therefore, that the mere seizure and sale, attended with no special injury to the plaintiff, would not afford a ground of action against these two defendants, although the sale was made in hostility to the lien. It is a plain conclusion of law, that the purchaser, in such circumstances, must take his title subject to the lien, if the mortgage is good and valid, as the jury found the fact to be. Cavanagh, as receiver of the property of the mortgagor, appointed in the supplementary proceeding, manifestly acquired only the mortgagor's interest, and he could sell no greater interest. He attempted, wrongfully and unjustifiably, to sell a greater, in other words, to pass a perfect, title; but the law would not permit him to do so. There was a right to sell, subject to the plaintiff's mortgage; and the attempt to sell, in defiance of that security, being in legal contemplation nugatory, occasioned no damage to the plaintiff, apart from the special circumstances attending the transaction. A sale of mortgaged chattels in gross to a single purchaser, and subject to the *Page 545 
lien, is a lawful act, whether done by the mortgagor himself, by the sheriff on execution against him, or by a receiver who has acquired his interest in the property. If such sale by either of them be made in hostility to the mortgage, and the attempt is made, although unsuccessfully, to pass an unincumbered title, then the act is so far wrongful. Nevertheless, it is a wrong without damage, if nothing is done to place the property beyond the reach of the mortgagee, or to prevent him from taking possession when his right of possession accrues. This court has determined that an action in the nature of trespass or trover, will not lie in such a case. (Hull v. Carnley, 1 Kern., 501;17 N.Y., 202; Goelet v. Asseler, 22 N.Y., 225.) Those forms of action depend on possession or the right of possession at the time of the alleged trespass. The title of a mortgagee of chattels is reversionary, so long as the mortgagor has the right of possession. Injuries to reversionary interests were always redressed by a special action in the case. But to maintain that action, or one of that nature, a special injury must be shown. If the wrongful act be proved, and the special injury appears, then I am of opinion that the law affords a remedy.
In this case there was no right to sell the interest of the plaintiff, because the receivership of Cavanagh extended only to that of the mortgagor. He proceeded, however, to sell not only in defiance of the mortgage, but at auction, in different parcels and to various purchasers whose very names, so far as appears, are unknown. In the language of the printed case, it was proved that the defendants, Cavanagh and Monaghan, "placed the goods in an auction store," in New York, and had them sold "to divers persons without any notice or recognition of the plaintiff's mortgage or claims, but treating the same as a nullity." It may be assumed that the auction was attended by a miscellaneous crowd; that the various purchasers bought in good faith; that each of them removed the article or articles purchased by him; and that the property became lost to the plaintiff, because the parcels were scattered and their situation unknown when his right of possession accrued. It appears *Page 546 
by a schedule, that the parcels were some thirty in number. In these circumstances there were both wrong and injury to the plaintiff, provided his debt was not secure in some way independently of the mortgage. At the maturity of that instrument, both the law and the contract gave him a right to take possession of the property for the satisfaction of his demand; and, if at that time, the articles were either consumed or placed beyond his reach, it would seem too plain for discussion, that all persons knowingly instrumental in the wrong ought to be answerable for it. Who were the parties thus instrumental? I answer, the receiver and the creditor who directed the proceedings; because they knew the plaintiff's rights, and, in total disregard of them, sold and delivered the property in such a manner that the result flowed necessarily from their conduct. Those who bought the property had never heard of the mortgage, and each carried his parcel away from the auction room, but where he carried it no one knew. The property was dispersed in every direction, as effectually beyond the plaintiff's reach as if it had been thrown into the sea. And its loss is as plainly and directly chargeable to the defendants' conduct, as if they themselves had been the immediate authors of its destruction by fire or water. It would require high authority to convince me that the law has no redress for such a wrong.
To test the principle involved, it is legitimate to suppose the strongest possible case. A, may have a mortgage upon the grocery stock of B, consisting wholly of provisions, liquors, teas, or other articles fit only to be eaten and drank. While the security has yet a year to run, the mortgagor having the right of possession, his execution creditor or the receiver of his property may seize and sell the stock. This is lawful if the seizure and sale be properly made. But the sale may be made at auction on successive days, in a thousand parcels and to a thousand purchasers without recognition of the mortgage and with the intention to destroy its value. After the lapse of a year the right of possession accrues to the mortgagee, but it comes too late. The property is not only dispersed but consumed, and the lien *Page 547 
of the mortgage is consequently good for nothing. Will it be said that here are not injury as well as wrong to the mortgage creditor? And who in a just sense, are the authors of the injury? Is it the persons who have innocently consumed the property, or those who sold it to them with the assertion, express or implied, that the title was perfect, knowing that assertion to be false, and having no right to make such a sale?
Again, suppose the mortgage is upon a span of horses and a pleasure carriage. The execution creditor of the mortgagor directs them to be levied on and sold in hostility to the lien, affirming the title to be perfect and knowing that the purchaser intends to take the property to the State of Georgia. Has the mortgagee in such a case no remedy except to follow the chattels and demand them in a distant state or country? It seems to me plain, that he may consider the value of the lien as practically destroyed, and seek his redress against the author of the injury.
For every wrong attended with loss and damage, the law affords a remedy. The existence of a mortgage upon personal estate may not prevent creditors from seizing and selling it to satisfy their just demands. But an attempt to sell in contravention of the lien, is an attempt to do a wrong and inflict a loss. An actual injury may or may not result, according to the circumstances. If it does result, the logical consequence is, that an action will lie founded on the special facts. It proves nothing to cite cases where the right to maintain trespass or trover has been denied. These forms of action were never designed to redress wrongs of this character.
The true principles of the question are well illustrated in the case of Van Pelt v. McGraw, determined by this court. (4 Comst., 110.) There a mortgagee of lands brought a special action on the case against the grantee of the mortgagor, for an injury to the lien. The defendant, with knowledge of the mortgage and of the insolvency of the mortgagor, had removed fences, and cut and carried away valuable timber. It was contended that as owner of the land he had a right so to do, and the general *Page 548 
right was conceded. It was held, however, that the law would not justify the exercise of the right in a manner and under circumstances calculated and designed to injure the plaintiff's security, and the action was accordingly maintained. It was observed that "acts may be harmless in themselves so long as they injure no one, but the consequences of the acts often give character to the acts themselves." So in this case it is said there was a legal right to seize and sell the mortgaged goods, because the mortgagor had an interest in them liable to seizure and sale by his creditors. But the plaintiff had a paramount lien, and if the creditors' proceedings were conducted in hostility to that lien so that the security was thereby lost or impaired, then the law will not justify such proceedings. "Sicutere tuo ut alienum non laedas," is a very old and a very sound maxim. The precise right of the creditor in a case like the present, is to make the mortgagor's interest available in satisfaction of his debt. It is perfectly plain that he has no other or greater right, and this he must exercise with a due regard to claims on the same property which are older and better than his. To an attempt to sell a greater interest than the debtor has, no justification can be pleaded. There may be immunity for the wrong if no damage results. But this does not prove that the act is right, or relieve the actor from the consequence if injury can be shown. So an action will not lie for defamation of character in many cases, unless the special damages be shown. But from this neither law nor common sense concludes that defamation is right.
The subject, I think, suggests the following propositions: 1. When chattels are covered by a valid mortgage with a continuing right of possession in the mortgagor, his interest, and that only, can be rightfully taken and sold on behalf of his creditors, and with the sale possession may be delivered. 2. On the authority of the cases in this court above-mentioned, it ought to be conceded that the mortgagee has no legal ground of action, although the sale is hostile to his right, provided the property is not dispersed or placed beyond his reach. Actual injury must be the ground of his complaint. 3. Property *Page 549 
thus situated should be sold in mass, and subject to the lien. If sold otherwise, if it is scattered and dispersed, the proceeding is both a wrong and an injury, provided the mortgagor is insolvent, and the debt to the mortgagee is not otherwise secured. For such an injury an action will lie.
I find, therefore, no reason to doubt that, upon the facts of this case, as the jury found them, the plaintiff can maintain his suit, founded on the special circumstances of the seizure and sale of the property in question. There is, however, a difficulty in maintaining the judgment which has been rendered against Monaghan and Cavanagh for the whole amount of the plaintiff's demand against Schenck, the mortgagor. On comparing the schedules of the property mortgaged and of that sold at the auction, it appears that some of the articles which the mortgage included were not taken or sold. But the number and value of these it is impossible to tell, from anything contained in the case. At the trial, in addition to the special questions left to the jury, these defendants requested the following, among others, to be submitted: "Was any property specified in the mortgage not taken by the receiver, and what articles of property? What was the value of the same?" The judge refused to submit these inquiries, and directed the jury to find, among other things, the value of the mortgaged property actually taken and sold. That value being found, and being equal to the plaintiff's debt, judgment was given accordingly. I think it was error thus to allow a verdict to be taken, and to render judgment upon it, without any regard to the property left in possession of the mortgagor. If the articles not interfered with were amply sufficient to satisfy the mortgage, it is impossible to say that the plaintiff sustained any injury at all. If they were partly sufficient, then the residue of his debt was the extent of his loss. It is true that the effect of a chattel mortgage, after forfeiture, is to give a title to the mortgagee which is called perfect at law. But even then an equity of redemption is left in the mortgagor, or those who succeed to his rights. In equity, the mortgagee is only entitled to his debt; and where a creditor has *Page 550 
rightfully taken a portion of the things mortgaged, it would seem to follow that the value of so much as is left ought to be considered in adjusting the relative rights of the parties. The mortgagee, if he chooses, may exhaust his remedy against what is left, before proceeding to recover for that which has been taken away. If he neglects to do so, the proper inquiry is, how much has his lien been injured? The action in this case, as we have seen, lies only for a special injury of that character. In estimating that injury, all the circumstances are to be considered, and, among them, the existing value of the security. These views of course only apply where a portion of the property has been rightfully taken by a creditor: and such is this case. On this ground, the judgment against Monaghan and Cavanagh must be reversed, and a new trial granted.
The appeal of the plaintiff from the judgment in favor of the defendant Gosling is next to be considered. It appears that this defendant was a purchaser in good faith at the auction sale of a portion of the property, amounting in value to $140; that the plaintiff, some months after the sale, on hearing the fact, demanded of him the articles so purchased, which were not given up. This demand and refusal are complained of as a wrongful conversion of the goods of which Gosling thus acquired the possession; and on this ground he seems to have been made a defendant in the action. The Supreme Court pronounced judgment in his favor, on the ground, as appears from its opinion, that, when the property was demanded of Gosling, more than a year had elapsed since the filing of the plaintiff's mortgage — the same not having been re-filed within the year, pursuant to the statute. (Laws of 1833, ch. 179; 2 R.S., 2d ed., 71.) This ground of decision, we think, was manifestly erroneous. Gosling purchased at the auction sale, which was within a year from the date and filing of the instrument; and all his right to the property then accrued. Chattel mortgages, unaccompanied by a delivery of possession, cease to be operative after one year from the filing, unless a copy is re-filed, c., as against creditors and subsequent purchasers and mortgagees in good faith. The meaning of this *Page 551 
statute is, that, if the mortgage be not renewed in the manner prescribed, and if the possession, after the year, still continues in the mortgagor, a subsequent purchaser in good faith will acquire a superior title. A purchaser who has bought during the year, in other words at a time when he cannot impeach the mortgage, and has thereupon himself taken the possession, is clearly not within the protection of the act.
Gosling therefore acquired no title to the property which he purchased, as against the plaintiff, if the mortgage of the latter was free from fraud, as the jury found. He nevertheless bought in good faith at the auction; and the sale, as we have seen, was also a rightful act, apart from the special circumstances tending to injure the plaintiff's lien. These circumstances, moreover, are to be imputed wholly to the defendants Monaghan and Cavanagh, who concealed the existence of the mortgage from the purchasers, and sold in hostility to it. Gosling clearly acquired a title to the articles which he purchased, subordinate to the mortgage, and he ought not in equity to be accountable if the plaintiff can collect his debt either out of the property not taken at all or from Monaghan and Cavanagh. Those two defendants should be deemed primarily liable in respect to all the property sold, because the injury to the plaintiff is the direct consequence of their proceedings, and because they received the price which the property produced. A proper adjustment of the rights of all the parties, I think, would be this: The plaintiff is entitled to compensation for his loss, a just regard being had to the value of any security which has not been disturbed. The defendants, Monaghan and Cavanagh, are liable to the extent of such loss for the value of all the mortgaged property which they caused to be seized and sold. Gosling is also liable for the value of the articles purchased by him; but any judgment to be recovered against him should be so rendered as to be auxiliary only to the collection of the amount recovered against the other defendants. Some of my brethren, however, think there is a misjoinder of defendants, and that on another trial the plaintiff must elect to abandon his suit either against Gosling or the other defendants. Perhaps they *Page 552 
are right. The judgment in Gosling's favor must also be reversed, and a new trial of the whole case must be ordered; costs to abide the event.
All the judges were in favor of reversal upon the ground stated by DENIO, J. A majority of the judges concurred with COMSTOCK, Ch. J., as to the right of a mortgagee to recover for damages to his reversionary interest. Some of them, however, deeming it improper to express a formal opinion, as the case was necessarily determined upon the ground of mis-trial, the question was not passed upon.
LOTT, J., dissented from the opinion of COMSTOCK, Ch. J., that chattels, subject to mortgage, must be sold in a mass. SELDEN, HOYT and JAMES, Js., thought there was a misjoinder of defendants.
Judgment reversed, and new trial ordered.