Denio, J.
I am of opinion that the judgment of the Superior Court should be reversed, on the ground that the case has not been tried in the manner contemplated by the law regulating the practice of the court. It will be perceived that, although there was a jury trial, there was no verdict of the jury, general or special. That there was not a general verdict is manifest, for the jury were not allowed to say whether the plaintiff should recover or not. In a general verdict the jury pronounce generally upon all or any of the issues, either in favor of the plaintiff or defendant. (Oode, §260.) A special verdict is that by which the jury find the facts only, leaving the judgment to the court. (Id.) This is also the definition of a special verdict at the common law. It must contain all the facts essential to the rendering of a judgment one way or the other; but the answers of the jury in this case embrace only a small portion of the facts necessary to a judgment. The execution of the mortgage, and its terms, which constituted the plaintiff’s title, are not mentioned, nor is there any allusion to the defendants’ judgment, or the appointment of a receiver, upon which the defence was based. The judge only submitted such questions of fact as appeared to him to be disputable. This is authorized by section 260 of the Oode. but only in connection with a *542 general verdict. The language is, that the court may, in all cases, instruct the jury, “if they render a general verdict, to find upon particular questions of fact, to be stated in writing, and may direct a written finding thereon.” Here no general verdict was contemplated, nor was any rendered; but the answers to the special inquiries were to be taken into consideration by the general term in connection with the facts upon which no inquiry by the jury was thought necessary. This was an assimilation to the practice of courts of equity, but was not congruous to the trial of a common-law action. But if the answers of the jury could be considered a special verdict,' the motion for judgment must be made in the first instance at a Circuit Court or a special term. (§ 265.) In this case, although the defendants were obliged to go to the special term with their exceptions, and with the question whether the findings were warranted by the evidence, judgment was to be applied for in the first instance at the general term, where the questions of law arising in the case, namely, upon the findings on the special questions in connection with the facts clearly proved, were to be primarily determined. The course pursued in the case was not warranted by that part of section 265 which directs “that, when exceptions are taken, the judge trying the cause may, at the trial, direct them to be heard in the first" instance at the general term, and his judgment be in the meantime suspended;” for there was no direction to send the exceptions to the general term, and they were in fact heard, as has been stated, primarily at the special term, and at the general term on appeal. Nor was it in conformity with that portion of the same section which provides “that where, upon a trial, the case presents only questions of law, the judge may direct a verdict subject to the opinion of the court at the general term; and in that cáse the application for judgment must be made at the general term.” This refers to a case where there is no litigation respecting the facts, but they are agreed upon or conclusively proved, so that there are no questions in the case but those of law. A case is not brought within the provision by having the disputed questions of fact settled by the jury, *543 and then ordering the case to the general term. It is only to a case which does not involve both classes of questions, and which does not require the two methods of trial, that the provision applies. Besides, where an order is made under either of these branches of the Code, there must be a general verdict. A case of legal, as distinguished from equitable, cognizance, cannot be sent to the general term, like a Chancery case under the former practice, with the testimony and the verdict upon the feigned issues to be considered in connection with the equity arising upon the undisputed facts. The Code has not essentially changed the nature of a j ury-trial in a common-law case. If there are questions of law and of fact, the judge must determine the former as they arise, and leave the others to the jury, who may find a general or special verdict, as they see fit. If the judge deems it expedient, for the purpose of an expected review, to have a special finding upon particular propositions, he may give appropriate directions for that purpose; or, if there are no questions except legal ones, as where the matter depends upon the construction or the effect of a written instrument, and the like, the jury may be peremptorily instructed to give a verdict one way or the other, subject to the opinion of the court at a general term, and the parties be directed to apply there for judgment; or he may leave the party against whom the decision is to move for a new trial on a case and exceptions in the ordinary course of justice.
We have frequently had occasion to state these rules, and have several times reversed judgments for want of conformity to them. Two cases of this kind are reported: Cobb v. Cornish (16 N. Y., 602); Gilbert v. Beach (id., 606); and the same course has been taken in a good many unreported cases. In' one of them (Clew v. McPherson), decided at the September term, last year, all the disputed questions had been determined in the manner adopted in this case—by taking the answers of the jury to special interrogatories; and the judge then directed the questions of law to be heard in the first instance at the general term, and that judgment should be there applied for. The case falling to me to write on, I considered the ques *544 tions of law to be very plain ones, and that, moreover, they had been correctly decided, as I thought, at the general terna, where judgment had been given for the defendant. I, therefore, proposed to my brethren to overlook the irregular manner in which the case had been disposed of in the Supreme Court, especially as it did not appear that the course had been objected to at the Circuit. The judges were, however, of opinion, in which I ultimately concurred, that it was expedient to adhere to the reported cases; it being thought that, in that way, a course of proceedings, such as we had indicated, would eventually be adopted at the Circuit Courts.
It follows from what has been said, that the judgment of the Superior Court in this case must be reversed, and a new trial awarded; the costs to abide the event.
Comstock, Ch. J.
The plaintiff’s mortgage was not due, and the mortgagor had a continuing right of possession at the time of the seizure of the goods in question by the defendants Monaghan and Cavanagh, and also at the time when they caused the property to be sold at auction. I think, therefore, that the mere seizure and sale, attended with no special injury to the plaintiff, would not afford a ground of action against these two defendants, although the sale was made in hostility to the lien. It is a plain conclusion of law, that the purchaser, in such circumstances, must take his title subject to the lien, if the mortgage is good and valid, as the jury found the fact to be. Cavanagh, as receiver of the property of the mortgagor, appointed in the supplementary proceeding, manifestly acquired only the mortgagor’s interest, and he could sell no greater interest. He attempted, wrongfully and unjustifiably, to sell a greater, in other words, to pass a perfect, title; but the law would not permit him to do so. There was a right to sell, subject to the plaintiff’s mortgage; and the attempt to sell, in defiance of that security, being in legal contemplation nugatory, occasioned no damage to the plaintiff, apart from the special circumstances attending the transaction. A sale of mortgaged chattels in gross to a single purchaser, and subject to the *545 lien, is a lawful act, whether done by the mortgagor himself, by the sheriff on execution against him, or by a receiver who has acquired his interest in the property. If such sale by either of them be made in hostility to the mortgage, and the attempt is made, although unsuccessfully, to pass an unincumbered title, 'then the act is so far wrongful. Nevertheless, it is a wrong without damage, if nothing is done to place the property beyond the reach of the mortgagee, or to prevent him from taking possession when his right of possession accrues. This court has determined that an action in the nature of trespass or trover, will not lie in such a case. (Hull v. Carnley, 1 Kern., 501; 17 N. Y., 202; Goelet v. Asseler, 22 N. Y., 225.) Those forms of action depend on possession or the right of possession at the time of the alleged trespass. The title of a mortgagee of chattels is reversionary, so long as the mortgagor has the right of possession. Injuries to reversionary interests were always redressed by a special action in the case. But to maintain that action, or one of that nature, a special injury must be shown. If the wrongful act be proved, and the special injury appears, then I am of opinion that the law affords a remedy.
In this case there was no right to sell the interest of the plaintiff, because the receivership of Cavanagh extended only to that of the mortgagor. He proceeded, however, to sell not only in defiance of the mortgage, but at auction, in different parcels and to various purchasers whose very names, so far as appears, are unknown. In the language of the printed case, it was proved that the defendants, Cavanagh and Monaghan, “ placed the goods in an auction store,” in New York, and had them sold “ to divers persons without any notice or recognition of the plaintiff’s mortgage or claims, but treating the same as a nullity.” It may be assumed that the auction was attended by a miscellaneous crowd; that the various purchasers bought in good faith; that each of them removed the article or articles purchased by him; and that the property became lost to the plaintiff, because the parcels were scattered and their situation unknown when his right of possession accrued. It appears *546 by a schedule, that the parcels were some thirty in number. In these circumstances there were both wrong and injury to the plaintiff, provided his debt was not secure in some way independently of the mortgage. At the maturity of that instrument, both the law and the contract gave him a right to take possession of the property for the satisfaction of his demand ; and, if at that time, the articles were either consumed or placed beyond his reach, it would seem too plain for discussion, that all persons knowingly instrumental in the wrong ought to be answerable for it. Who were the parties thus instrumental ? I answer, the receiver and the creditor who directed the proceedings; because they knew the plaintiff’s rights, and, in total disregard of them, sold and delivered the property in such a manner that the result flowed necessarily from their conduct. Those who bought the property had never heard of the mortgage, and each carried his parcel away from the auction room, but where he carried it no one knew. The property was dispersed in every direction, as effectually beyond the plaintiff’s reach as if it had been thrown into the sea. And its loss is as plainly and directly chargeable to the defendants’ conduct, as if they themselves had been the immediate authors of its destruction by fire or water. It would require high authority to convince me that the law has no redress for such a wrong.
To test the principle involved, it is legitimate to suppose the strongest possible case. A, may have a mortgagé upon the grocery stock of B, consisting wholly of provisions, liquors, teas, or other articles fit only to be eaten and drank.' While the security has yet a year to run, the mortgagor having the right of possession, his execution creditor or the receiver of his property may seize and sell the stock. This is lawful if the seizure and sale be properly made. But the sale may be made at auction on successive days, in a thousand parcels and to a thousand purchasers without recognition of the mortgage and with the intention to destroy its value. After the lapse of a year the right of possession accrues to the mortgagee, but it comes too late. The property is not only dispersed but consumed, and the lien *547 of the mortgage is consequently good for nothing. Will it be said that here are not injury as well as wrong to the mortgage creditor? And who in a just sense, are the authors of the injury? Is it the persons who have innocently consumed the property, or those who sold it to them with the assertion, express or implied, that the title was perfect, knowing that assertion to be false, and having no right to make such a sale?
Again, suppose the mortgage is upon a span of horses and a pleasure carriage. The execution creditor of the mortgagor directs them to be levied on and sold in hostility to the lien, affirming the title to be perfect and knowing that the purchaser intends to take the property to the State of Georgia. Has the mortgagee in such a case no remedy except to follow the chattels and demand them in a distant state or country ? It seems to me plain, that he may consider the value of the lien as practically destroyed, and seek his redress against the author of the injury.
For every wrong attended with loss and damage, the law affords a remedy. The existence of a mortgage upon personal estate may not prevent creditors from seizing and selling it to satisfy their just demands. But an attempt to sell in contravention of the lien, is an attempt to do a wrong and inflict a loss. An actual injury may or may not result, according to the circumstances. If it does result, the logical consequence is, that an action will lie founded on the special facte. It proves nothing to cite cases where the right to maintain trespass or trover has been denied. These forms of action were never designed to redress wrongs of this character.
The true principles of the question are well illustrated in the case of Van Pelt v. McGraw, determined by this court. (4 Comst., 110.) There a mortgagee of lands brought a special action on the case against the grantee of the mortgagor, for an injury to the lien. The defendant, with knowledge of themort- • gage and of the insolvency of the mortgagor, had removed fences, and cut and carried away valuable timber. It was contended that as owner of the land he had a right so to do, and the general *548 right was conceded. It was held, however, that the law would riot justify the exercise of the right in a manner and under circumstances calculated and designed to injure the plaintiff’s security, and the action was accordingly maintained. It was observed that “ acts may be harmless in themselves so long as they injure no one, but the consequences of the acts often give character to the acts themselves.” So in this case it is said there was a legal right to seize and sell the mortgaged goods, because the mortgagor had an interest in them liable to seizure and sale by his creditors. But the plaintiff had a paramount lien, and if the creditors’" proceedings were conducted in hos tility to that lien so that the security was thereby lost or impaired, then the law will not justify such proceedings. “Sic utere tuo ut alienum non laedas,” is a very old and a very sound maxim. The precise right’of the creditor in a case like the present, is to make the mortgagor’s interest available in satisfaction of his debt. It is perfectly plain that he has no other or greater right, and this he must exercise with a due regard to claims on the same property which are older and better than his. To an attempt to sell a greater interest than the debtor has, no justification can be pleaded There may be immunity for the wrong if no damage results. But this does not prove that the act is right, 05 relieve the actor from the consequence if injury can be shown. So an action will not lie for defamation of character in many cases, unless the special damages be shown. But from this neither law nor common sense concludes that defamation is right.
The subject, I think, suggests the following propositions:
1. When chattels are covered by a valid mortgage with a continuing right of possession in the mortgagor, his interest, and that only, can be rightfully taken and sold on behalf of his creditors, and- with the sale possession may be delivered.
2. On the authority of the cases in this court above-mentioned, - it ought to be conceded that the mortgagee has no legal ground of action, although the sale is hostile to his- right, provided the property is not dispersed or placed beyond his reach. Actual injury must be the ground of his complaint. 3. Pro *549 perfcy thus situated should be sold in mass, and subject to the lien. If sold otherwise, if it is scattered and dispersed, the proceeding is both a wrong and an injury, provided the mortgagor is insolvent, and the debt to the mortgagee is not otherwise secured. For such an injury an action will lie.
I find, therefore, no reason to doubt that, upon the facts of this case, as the jury found them, the plaintiff can maintain his suit, founded on the special circumstances of the seizure and sale of the property in question. There is, however, a difficulty in maintaining the judgment which has been rendered against Monaghan and Cavanagh for the whole amount of the plaintiff’s demand against Schenck, the mortgagor. On comparing the schedules of the property mortgaged .and of that sold at the auction, it appears that some of the articles which the mortgage included were not taken or sold. But the number and value of these it is impossible to tell, from anything contained in the case. At the trial, in addition to the special questions left to the jury, these defendants requested the following, among others, to be submitted: “Was any property specified in the mortgage not taken by the receiver, and what articles of property ? What was the value of the same?” The judge refused to submit these inquiries, and directed the jury to find, among other things, the value of the mortgaged property actually taken and sold. That value being found, and being equal to the plaintiff’s debt, judgment was given accordingly. I think it was error thus to allow a verdict to be taken, and to render judgment upon it, without any regard to the property left in possession of the mortgagor. If the articles not interfered with were amply sufficient to satisfy the mortgage, it is impossible to say that the plaintiff sustained any injury at all. If they were partly sufficient, then the residue of his debt was the extent of his loss. It is true that the effect of a chattel mortgage, after forfeiture, is to give a title to the mortgagee which is called perfect at law. But even then an equity of redemption is left in the mortgagor, or those who succeed to his rights. In equity, the mortgagee is only entitled to his debt; and where a creditor has *550 rightfully taken a portion of the things mortgaged, it would seem to follow that the value of so much as is left ought to be considered in adjusting the relative rights of the parties. The mortgagee, if he chooses, may exhaust his remedy against what is left, before proceeding to recover for that which has been taken away. If he neglects .to do so, the proper inquiry is, how much has his lien been injured? The action in this case, as we have seen, lies only for a special injury of that character. In estimating that injury, all the circumstances are to be'considered, and, among them, the existing value of the security. These views of course only apply where a portion of the property has been rightfully taken by a creditor: and such is this case. On this ground, the judgment against Monaghan and Cavanagh must be reversed, and a new trial granted.
The appeal of the plaintiff from the judgment in favor, of the defendant Gosling is next to be considered. It appears that this defendant was a purchaser in good faith at the auction sale of a portion _of the property, amounting in value to $140; that the plaintiff, some months after the sale, on hearing the fact, demanded of him the articles so purchased, which were-not given up. This demand and refusal are complained of as a wrongful conversion of the goods of which Gosling thus acquired the possession; and on this ground he seems to have been made a defendant in the action. The Supreme Court pronounced judgment in his favor, on the ground, as appears from its opinion, that, when the property was demanded of Gosling, more than a year had elapsed since the filing of the plaintiff’s mortgage — the same not having been re-filed within the year, pursuant to the statute. (Laws of 1833, ch. 179; 2 R. S., 2d ed., 71.) This ground of decision, we think, was manifestly erroneous. Gosling purchased at the auction sale, which was within a year from the date and filing of the instrument; and all his right to the property then accrued. Chattel mortgages, unaccompanied by a delivery of possession, cease to be operative after one year from the filing, unless a copy is re-filed, &c., as against creditors and subsequent purchasers and mortgagees in good faith. The meaning of this *551 statute is, that, if the mortgage he not renewed in the manner prescribed, and if the possession, after the year, still continues in the mortgagor, a subsequent purchaser in good faith will acquire a superior title. A purchaser who has bought during the year, in other words at a time when he cannot impeach the mortgage, and has thereupon himself taken the possession, is clearly not within the protection of the act.
Gosling therefore acquired no title to the property which he purchased, as against the plaintiff, if the mortgage of the latter was free from fraud, as the jury found. He nevertheless bought in good faith at the auction; and the sale, as we have seen, was also a rightful act, apart from the special circumstances tending to injure the plaintiff’s lien. These circumstances, moreover, are to be imputed wholly to the defendants Monaghan and Cavanagh, who concealed the existence of the mortgage from the purchasers, and sold in hostility to it. Gosling clearly acquired a title to the articles which he purchased, subordinate to the mortgage, and he ought not in equity to be accountable if the plaintiff can collect his debt either out of the property not taken at all or from Monaghan and Cavanagh. Those two defendants should be deemed primarily liable in respect to all the property sold, because the injury to the plaintiff is the direct consequence of their proceedings, and because they received the price which the property produced. A proper adjustment of the rights of all the parties, I think, would be this: The plaintiff is entitled to compensation for his loss, a just regard being had to the value of any security which has not been disturbed. The defendants, Monaghan and Cavanagh, are liable to the extent of such loss for the value of all the mortgaged property which they caused to be seized and sold. Gosling is also liable for the value of the articles purchased by him; but any judgment to be recovered against him should be so rendered as to be auxiliary only to the collection of the amount _ recovered against the other defendants. Some of my brethren, however, think there is a misjoinder of defendants, and that on another trial the plaintiff must" elect to abandon his suit either against Gosling or the other defendants. Perhaps they *552 are right. The judgment in Gosling’s favor must also be reversed, and a new trial of the whole case must be ordered; costs to abide the event.
All the judges were in favor of reversal upon the ground stated by Denio, J. A majority of the judges concurred with Comstock, Ch. J.,.as to the right of a mortgagee to recover for damages to his reversionary interest. Some of them, however, deeming it improper to express a formal opinion, as the case was necessarily determined upon the ground of mis-trial, the question was not passed upon.
Lott, J., dissented from the opinion of Comstock, Ch. J., that chattels, subject to mortgage, must be sold in a mass. Selden, Hoyt and James, Js., thought there was a misjoinder of defendants.
Judgment reversed, and new trial ordered.