168          CASES IN THE SUPREME COURT

Ashley et al vs. Cunningham et al.          [JANUARY

ASHLEY ET AL. VS. CUNNINGHAM ET AL.

When a cause has been decided by the Supreme Court, and remanded for further proceedings, none of the parties has a right to raise any question, in the inferior court, touching the correctness of the decision of the Supreme Court: and where one of the parties dies, during the pendency of the cause in the Supreme Court, the heir, upon being made a party in the court, to which the cause is remanded, takes the place of the ancestor, and stands in precisely the same situation as any other party

The death of the complainant being suggested, his heirs applied to be admitted parties in his stead, to prosecute the suit to final decree: the defendants objected, and presenting to the court a deed of conveyance for the land in controversy, executed by the complainant before his death, and after the commencement of the suit, suggested that the grantee was the proper party: HELD, That the heirs of the complainant were the proper parties.

The complainant being restricted to a pre-emption of one-half of the quarter section, in consequence of there being another settler upon the same quarter, who was entitled to a pre-emption, though no entry was made under it, is entitled, in the division of the quarter, to the east-half, though that portion embrace the location of the other settler as well as his own—both having settled upon the same subdivision of the quarter.

*Cross Appeals from the Circuit Court of Pulaski County in Chancery.*

Hon. WM. H. FEILD, Circuit Judge.

CURRAN & GALLAGHER, for the appellants.

PIKE & CUMMINS, for the appellees.

Mr. Justice WALKER delivered the opinion of the Court.

This suit was brought in the Pulaski Circuit Court in Chancery, by Matthew Cunningham, against Chester Ashley and Roswell Beebe, in which the complainant set up title to the south-east

quarter of section three, township one north, range twelve west, under the pre-emption act of the 29th May, 1830, which tracts the defendants had entered with pre-emption floats, over the superior equity of complainant. The history of the case, and the several decisions had in this, and the Supreme Court of the United States, will be found reported in 7 *Eng.* 296, and 13 *Ark. R.* 653, 670.

Upon appeal from the decision of this court, (7 *Eng.* 296,) to the Supreme Court of the United States, that court decided in favor of the pre-emption claim of Cunningham, and that the location of the two pre-emption floats, so far as they interfered with rights of Cunningham to a pre-emption of eighty acres, including his improvement on that tract, was void. The court, therefore, reversed the decision of this court, which denied the superior equity of Cunningham's claim, and remanded the case to this court, with instructions to enter a decree in pursuance of their opinion, which was: "That, on a full consideration of the pleadings and proofs in the case, that the two entries of eighty acres each, made in the name of Samuel Plummer, and Mary Louisa Imbeau, on the south-east quarter of section number three, in township one north, and in range twelve west, of the fifth principal meridian, south of Arkansas River, are void, so far as they interfere with the pre-emptive right of Matthew Cunningham, to one-half of the said quarter; and that Roswell Beebe and the heirs of Chester Ashley, deceased, defendants, shall execute a deed of quit-claim to the said Cunningham, on his paying, or tendering to them the minimum price of the public land, with interest from 6th of June, 1838, the time the above entries were made, to one-half of the above quarter section, by east and west, or north and south lines, so as to include his improvement on the quarter section: or, if such a division could not be made, that they convey to him, as aforesaid, a joint interest of one-half in said quarter section.

At the January Term, 1853, the mandate of the Supreme Court having been filed in this court, the defendants appeared and filed

12ʙ

their suggestion, that after the writ of error sued out from the decision of this court to the Supreme Court of the United States, Frances Ann Ashley, one of the defendants, had intermarried with Andrew F. Freeman, and thereafter had died, leaving an infant child, Mary Ashley Freeman, her sole heir, who was then living; and questioned the right of this court to proceed in the cause until she was made a party to the suit.

Before any action taken upon this suggestion, the defendants filed two pleas, setting up the same facts in bar of the right to any action by this court in obedience to the mandate of the Supreme Court of the United States. The complainant moved to strike these pleas from the files of this court.

The ground of objection to the action of this court, in obedience to the mandate of the Supreme Court of the United States, was, that because of the death of Mrs. Freeman, before the decision of the United States Court was made, the decision of the court could not bind her heir; and that she should be made a party, with a right to be heard upon the merits of her defence.

But this court held, that it was its duty to obey the mandate of the Supreme Court of the United States, and to carry into effect its judgment and decision, even though such decision might have been made contrary to law, or under a misapprehension of facts; and that, as regards the particular grounds of objection presented after the submission of the cause, the parties have no right to be heard, and if one of the parties dies after submission, there is no necessity for suggesting his death upon the record, or for bringing his representatives before the court, in order to have a final decision of the questions of law arising upon the record. The practice in such case being to direct the decision to be entered as of a day prior to the death of the defendant, and subsequent to the submission of the cause.

The motion to strike out the pleas was sustained, and this court, in conformity to the decision of the Supreme Court of the United States, and in the language of the decision, decided in favor of the complainants, and directed the Circuit Court to as-

certain the locality of the improvement, and that upon the complainant's paying, or tendering to the defendants the minimum price of the public land, with interest from the 6th of June, 1838, that defendants execute to complainant a deed of quit-claim, to one-half of said quarter section, by east and west, or north and south lines, so as to include complainant's improvement on said quarter section; such division, if practicable, to be made according to the usual legal subdivisions by which the United States divide lands granted by 80 acre grants to pre-emptioners, or if such division could not be made, that the defendants convey to him as aforesaid, a joint interest of one-half of said quarter section.

When the mandate of this court went down to the Circuit Court, with instructions to enter a decree in conformity therewith, the complainant tendered, and deposited in court, $190 10, the minimum price, with the interest thereon, for 80 acres of public land, from the time the entry was made, and moved the court for a decree for the east-half of said quarter section. The complainant also admitted of record, that the improvements, both of Cunningham and Brumback, were exclusively on the north-east quarter of said quarter section, and that both improvements would be included in the north, or the east-half of said quarter section.

The case, under a rule of practice, was for want of notice of the filing of the mandate, to the defendants, continued from the June until the October Term, 1853 ; at which time the complainant filed a bill of revivor, to revive the suit in the name of Mary A. Freeman, the infant child of Frances A. Freeman, deceased. Process was issued and duly served upon the infant, and a guardian *ad litem* appointed, by whom she answered.

The answer recapitulates the several steps taken in the case, and without showing any cause why she should not be made a party, but fully assuming that she is the heir and representative of her mother, Mrs. Freeman, in interest in the estate, is intended to assail the validity and binding effect of the decision of the

Supreme Court, and of this court, upon the rights of her deceased mother, and consequently upon herself.

The other defendants, by way of suggestions, present the same grounds, as set up in the answer of the infant, and the answer as well as the suggestions, admit that the improvements, of both Cunningham and Brumback, were on the north-east quarter of said quarter section, and would be entirely embraced within the north, or the east-half of said quarter section. They moreover suggest, that both the north and the east-half of said quarter are far more valuable than the south or the west-half, and that no equitable division can be made by giving to complainant either the north or the east-half of said quarter section. In the answer of the defendant, it is also suggested, that Andrew F. Freeman, her father, is living, and should be also made a party to the suit.

The cause was set for hearing at the June Term, 1854, to which time it was continued. During that term, Matthew Cunningham, the complainant, died, and his widow and heirs came in, and suggested that there was not, and would not be any administration of his estate, and moved that the suit proceed in their names, for a revivor against Mary A. Freeman, and for a final decree.

The defendants produced the deed of Matthew Cunningham to Peter Hanger, husband to one of the heirs, and one of the applicants to be admitted as plaintiff, made in 1851, conveying to him his whole interest in the property in controversy, and opposed the application upon the ground, that the heirs of Matthew Cunningham had no such interest in the estate, as to entitle them to proceed with the suit in their names.

But the court overruled the objection, and made the order substituting them as complainants, revived the suit against Mary A. Freeman, and decided that Andrew Freeman was not a necessary party, and decreed that defendants should convey, by quitclaim deed, the east-half of the quarter section to the complainants.

The complainants also moved that an account for rents and profits should be ordered; which motion the court overruled.

From so much of the ruling and decision of the court as refused to order an account to be taken of rents and profits, the complainants appealed : and, from the decree as rendered, the defendants appealed.

This brief reference to the history of the case, from its inception to the present time, has become necessary, to present clearly the points still open for investigation.

Every attempt made by the defendants to go behind the decision of the Supreme Court of the United States, and of this court, was properly disregarded. The validity of the decision of the United States Court upon the rights of the heir of Mrs. Freeman, had been presented upon the return of the mandate of that court to this, and it was held, in all respects, as binding upon her, notwithstanding her death after the supersedeas, and before submission and decision by that court, as if she had been, at the time, alive. *Cunningham vs. Beebe et al.*, 13 *Ark*. 673. And the court then, under a familiar rule of practice, ordered the decision to be entered as of a day prior to the death of Mrs. Freeman, and subsequent to the submission of the cause ; which was accordingly done.

This decision conclusively settles the question as to the effect of the decision of the Supreme Court of the United States, upon the rights of Mrs. Freeman. If she had remained in life, when the case was sent back to the Circuit Court, with the mandate of this court to carry into effect its decision, it is very evident that she, no more than Beebe, or any other of the defendants, could have been heard to question the decision of this court, whether right or wrong. All questions submitted to the decision of the Supreme Court, are to be considered as settled, and the mandate of the Supreme Court is obligatory upon the inferior court to carry it into effect. As held in *Fortenberry vs. Frazier*, 5 *Ark. Rep*. 202 : "Nothing is before the inferior court for its adjudication but the proceedings subsequent to the mandate."

If then such would have been the effect of the decision of the Supreme Court upon the rights of Mrs. Freeman, if living, it neces-

sarily follows that the effect upon the rights of her infant child, must be precisely the same; because, by reviving the suit in her name, she becomes substituted, as a party, in the place and stead of the mother, and as the successor in rights and interests, just as they existed in the mother at the time of her death.

The doctrine held in *Fortenberry vs. Frazier*, was considered and approved in *Doe dem. Hanly vs. Porter et al.*, 5 *Eng. Rep.* 190, and several other still more recent decisions of this court, and is well sustained by the decision of the Supreme Court of the United States in *Sheller's ex. vs. May's ex.*, 6 *Cranch* 266, and *Ex parte Tobias Watkins*, 3 *Peters Rep.* 193.

And although it would seem in the case of *Nevis vs. Scott et al.*, 13 *Howard* 270, that the first decree was stricken out, and a re-argument had in the case, because one of the defendants, as was made appear to the court, was dead: still, the question seems neither to have been argued, nor any reason assigned for doing so by the court. Indeed, it seems to have been done upon suggestion, and without opposition or reference to authority. And without conceding the correctness of such a practice in the same court where the decision was made, even if such should be the case, it could not be received as an authority to authorize an inferior court to disregard the authoritative mandate of the superior court, and to re-investigate the questions presented before it for decision, and upon which a decision has been made. To tolerate this, would be, in effect, constituting the inferior into the superior court, with power to decide upon the correctness and validity of its decisions. The life and efficacy of the decisions of the Supreme Court would be sapped, if they could be either evaded or questioned by the inferior court. There must be an end to litigation, and a supreme and final arbiter, whose decisions must be respected and obeyed.

Under this view of the question, when the suit was revived in the name of the infant, Mary A. Freeman, she took the place of her mother, and in it stood precisely in the same situation as any other of the defendants; none of whom had a right to raise any

question touching the correctness of the decision of the Supreme Court.

The next question to be considered is, as to the propriety of making Cunningham's heirs parties to the suit after the death of Cunningham, who had, before his death, but after the commencement of this suit, conveyed the land to Peter Hanger, one of the parties, who, by marriage, claimed to be substituted as plaintiff in this suit.

In order more clearly to present this question, we will first consider the effect of the conveyance from Cunningham to Hanger, upon the suit, before Cunningham's death.

Hanger, the purchaser, was affected with notice of the pendency of the suit for this property; because, as remarked by Judge STORY, (*Equity, vol.* 1, *chap.* 405) "Every man is presumed to be attentive to what passes in the courts of justice of the sovereign State where he resides. And, therefore, a purchase made of property, actually in litigation, *pendente lite,* for a valuable consideration, and without any express or implied notice in point of fact, affects the purchaser in the same manner as if he had such notice; and he will, accordingly, be bound by the judgment or decree in the suit." In *section* 406, he says: "The litigating parties are exempt from taking any notice of the title so acquired; and such purchaser need not be made a party to the suit." "Hence," he says, "arises the maxim, *pendente lite nihil innovetur;* the effect of which is not to annul the conveyance, but only to render it subservient to the rights of the parties in the litigation. As to the rights of these parties, the conveyance is treated as if it never had any existence, and it does not vary them."

And to this effect was the decision of this court in *Whiting and Slark vs. Beebe et al.,* 7 *Eng.* 564, in which it was said: "A purchaser *pendente lite* acquires no title by his purchase, which he can set up or assert to the prejudice of the parties litigant, and the suit will be heard and determined upon the merits, as it stood between the parties litigant, perfectly irrespective of any rights which he may have acquired by such purchase: which, if

valid for any purpose, can only be so as between himself and his vendor, to enable him, upon the determination of the suit, to succeed to the rights of such vendor, or perhaps, if a party to the suit, to enable the court, after the determination of the rights of his vendor, favorably, to decree them to him."

That such would have been the effect of the purchase of Hanger, as regards the present suit, if it had been prosecuted to a final hearing and decree, during the life time of the complainant, there can be no question : indeed, this is not seriously controverted by the defendants; but they contend, that by force of this conveyance, he had parted with his title to the property before his death, and that in fact nothing survived to his heirs, but that the title being in the purchaser, he was the sole party in interest, and being such, none other could be substituted. Now we have shown that such was not the effect of the deed, during the complainant, Cunningham's life, but that, as regards this suit, and the rights of the parties in litigation, it stands in suspension as completely as if no such deed had been made : indeed, there are not wanting respectable authorities that hold it to be champertous and void. And if such was not the case, during Cunningham's life, it must have been because, from a prevailing necessity in the administration of the law, the right to litigate, and finally to determine this suit, still remained in him, as fully as if no such deed had been made; and so remaining at his death, might be asserted by his heirs. They succeeded to all the rights of their ancestor, and this was clearly such, because the deed communicated no more perfect title to Hanger by the death of Cunningham than he possessed before his death.

But, in another point of view, there is a manifest propriety in disregarding this conveyance in the progress and final determination of this suit. Will the court permit an issue to be raised between Hanger, the purchaser, and the heirs of Cunningham, as to the validity of his purchase? And if not, shall the heirs be thrust aside, and an intruder, who brings a paper title to the property in suit, step in and take a final decree for the property in

his name? We should say not; and, if not, will the court, after years of litigation between parties, and just at the time when the final decree is to be entered, stop to open a new issue, and protract the final determination of the suit, to an indefinite, if not upon principle (if sanctioned in this instance) to an endless litigation.

But the most remarkable feature in this objection to the substitution of Cunningham's heirs, is, that it should come from the defendants. If Hanger himself claimed to be substituted as sole complainant and party in interest, the defendants might well have said: We have had a tedious and an expensive contest with the ancestor of these complainants, and we are unwilling now to turn aside to scrutinize the pretensions of this intruder, who claims to be his assignee; at the close of so hot a chase, it is not fair to turn in a fresh pack upon us. But so far from this, the complaint is, that the old claimants are not turned off, and this purchaser, who does not himself set up any claim as such, should be made to litigate and contest with them the right to the property, (if indeed at this advanced stage of the case there is anything to litigate, other than what necessarily follows from previous adjudication).

But the truth is, Hanger is already a party by substitution, not in his right as purchaser, but by marriage, and with his wife, and the other heirs of Cunningham, he is a complainant.

The cases in 1 *Barb.* 648, and 9 *Miss.* 605, cited and relied upon by the counsel for the defendant, upon examination, are found not to affect the grounds upon which we think this case must be decided. In the case in 1 *Barb.*, it appeared that an assignment of a judgment, which the party had intended to make after appeal taken, was, in fact, made before the appeal was entered. Upon the question as to whether it was necessary to revive the proceeding on the appeal before proceeding to argument, the court expressly declined giving any opinion. There is no authority cited; and, from the facts of the case, there was no necessity for investigating this question.

In the case in 9 *Miss.*, the question arose upon a bill of review,

178　　　　　　　　CASES IN THE SUPREME COURT

Ashley et al. vs. Cunningham et al.　　　　　　[JANUARY

not a bill of revivor, and in investigating the case, the court remarked, that if the complainant assigned his interest in the suit *pendente lite*, if the defendant wished to have the suit brought to a termination, his proper course was to apply to the court for an order, that the assignee proceed and file a supplemental bill, in the nature of a bill of revivor, or in the event of his failing to do so, the bill would be dismissed. The only authority cited for this, is 7 *Paige* 287. Upon reference to that case, it would be found that the question arose in a case where an insolvent assigned his estate, *pendente lite*, whereby the insolvent loses his capacity to sue, and the assignee, who takes the estate to be distributed amongst the creditors, is, in fact, the proper and only party interested; for the heir, in such case, gets nothing from the insolvent's estate.

This case is essentially different. Here the heirs succeed to the estate of the father. The contract, *pendente lite*, gives no right to the assignee to obtrude his claims upon the notice of the court, or the litigants. To that extent, his purchase is dormant, and avails him nothing. And even if the case reported in 9 *Miss.* was directly in point, with all due respect to the opinion of that court, we should hesitate to receive it as an authority to be followed, when it stands so strongly opposed to the whole doctrine of claimants, purchasers *pendente lite*. And particularly in a case like this, and where the heirs have all appeared and made themselves parties, and where the purchaser is in fact a party complainant to the suit, electing to take as heir and not as purchaser by deed. Not a shadow of doubt exists, but that the decree rendered as between these parties and defendants, will be final and conclusive upon all the rights at issue in this suit; at least, as far as the defendants are concerned; and such being the case, they have no reason to object to the prosecution of the suit to final hearing with these complainants.

But suppose the names of the heirs of Cunningham should be stricken out as parties complainant, and Hanger substituted as sole complainant—what then? Are not his rights as fully and

definitely settled by the previous decisions in the case as Cunningham's, from whom he purchased, were ? or shall the defendants be permitted to open anew, the old issues between them and Cunningham ? We think not. And if not, there is no apparent reason for a mere change of names without benefit to the defendants. It is evident, therefore, that this objection was not well taken.

The remaining question, upon the appeal of the defendants, relates to the execution of the mandate of the Supreme Court.

The ground of objection to the decree in this respect, is predicated upon the assumption that Cunningham and Brumback were each entitled to a pre-emption under the same act of Congress, and upon the same subdivision of the quarter; and, consequently, neither was entitled to the tract on which their improvements were made, to the exclusion of the other ; and, therefore, that no division could be made which would do justice to them, because whether divided by east and west, or north and south lines, the tract on which both improvements would fall, would be of far more value than the other, and that standing in the relation of tenants in common, as between Cunningham, and Ashley and Beebe, who succeeded by purchase to the rights of Brumback, nothing but a sale of the land and division of the proceeds thereof, would be equitable and just.

Conceding the premises to be well founded, such would seem to be just; but, upon examination, the facts of the case are essentially different in this ; that although it was proven that Brumback was entitled to a pre-emption of equal validity with Cunningham's, and on the same subdivision of the same quarter section, and that Ashley was the purchaser thereof, yet still no entry was ever made under Brumback's pre-emption, nor did the defendants claim title to the land by virtue thereof: that claim was lost to them, or if available for any purpose, it was only to pave the way to laying the floating pre-emptions of Plummer and Imbeau. This it was, according to the view taken by the Supreme Court of the United States, which removed the objections to the location of 80 acres under and by virtue of the pre-emption floats;

180 CASES IN THE SUPREME COURT

because, says the court, although not made by Ashley, it was owned by him. It was then the purchase of the improvement, and not the pre-emption of Brumback, that was available to the defendants, and then, not by way of conferring a right to enter the land, but to remove obstacles in the way of an entry under the floating pre-emptions.

Thus it was held, that Cunningham was entitled to enter 80 acres under his pre-emption right of 1829 and '30, and the defendants to 80 acres under their floats: but then these were not held to be claims of equal merit. So far from this, these floats were swept off as void, so far as they affected, or interfered with the rights of Cunningham; and the court directs that the 80 acres to Cunningham shall be laid off "by east and west, or north and south lines, so as to include his improvement," and that if this cannot be done, that defendants convey to him a joint interest of one-half of the land.

The Supreme Court seems to have overlooked the particular locality of Cunningham's improvement, or out of abundant caution, to have so shaped their decision as to secure to Cunningham the full benefit of his pre-emption, and standing as it did, without any rival claim to a pre-emption, or rather to any title under one, there was a manifest propriety in doing so.

The fact as to the particular locality of the improvement of Cunningham, having been admitted by the parties of record, it became the duty of the Circuit Court, in obedience to the mandate of the Supreme Court of the United States, to decree the east-half of the quarter section—it being the usual subdivision made by the United States of its public lands, and Cunningham's improvement being exclusively on that tract.

According to the view of the case thus taken, it follows, that so far as the exceptions of the defendants extend, and for the alleged errors to correct which they appealed, the decree of the Circuit Court was correct, and should be affirmed.

Before Mr. Justices SCOTT and WALKER, and Hon. THOS. JOHNSON, Special Judge.

Mr. Chief Justice ENGLISH not sitting in this case.