ELLEN T. HAYES, Respondent, *v.* CHARLES J. NOURSE, Jr., Appellant.

A pending action, brought to establish title to or a lien upon land, does not of itself, nor does a duly recorded notice of its pendency, make the title defective or create a lien on the land.

The fact that all the heirs of a deceased plaintiff, in an action to compel a specific performance by the vendor of a contract for the sale of land, are infants is not a legal excuse for a failure on their part to perform the contract of their ancestor, and the *laches* which would have barred the action had he survived, will bar its prosecution by them.

A purchaser *pendente lite* of the subject of the litigation in such an action, if he buys in good faith, and without actual notice of the claims of the litigants, is not affected by the suit pending, unless it has been prosecuted with due diligence.

The right of the plaintiff in such an action to revive and continue it against the successors in interest of a deceased defendant may be lost by long delay in making the application, especially if the successors are purchasers in good faith, and if the condition and value of the property

have greatly changed, and the only witnesses by whom the facts in issue could have been established are dead.

In an action by the vendee to recover back a payment made upon an executory contract for the sale of land, on the ground that the title was defective, it appeared that, in 1819, K. owned the premises in fee, and was in possession; he died in 1824 seized of the premises, which, by his. will, he devised to his five children. Four of them deeded their interests to the fifth; the deed was recorded, and the grantee took and remained in possession until 1854, when she conveyed the premises to P., who took and remained in possession until 1884, when he conveyed them to defendant. The contract for the sale was made in March, 1885. The facts upon which the objection to the title was based were these: In July, 1836, a bill in chancery was filed by the heirs of one McG. against the devisees of K., and on the same day a notice of the pendency of the action was also filed. The bill alleged these facts: In 1819 an executory contract for the sale of the premises by K. to McG. for $1,200 was executed by them; $200 was paid thereon by the vendee, who entered into possession, and, in 1820, expended $2,000 in making improvements upon the premises. To complete the improvements McG. borrowed $300 of K. upon an oral agreement that K. would convey the lots to McG. and receive from him a mortgage as security for the loan and the balance of the purchase-price; and to secure K. until the deed and mortgage were discharged, McG. delivered the contract to K., who never returned it and failed to convey. McG. continued in possession, paying interest on the contract until May, 1825, when he died intestate, leaving the complainants, then infants of tender years, his only heirs-at-law. Shortly thereafter defendants took and have since retained possession. The answer set up various perfect defenses. The proofs were declared closed in April, 1838. No proceedings were thereafter taken in the suit, except in May, 1844, when there was a substitution of solicitors for complainant. All of the defendants in said suit died prior to November 6, 1881, about twenty years before the trial of this action. P., then the owner, and then for the first time being advised that there was a question as to the title, made strenuous but. ineffectual efforts to find the complainants in the chancery suit. It did not appear what had become of them; simply that they had not been heard of for many years, and were supposed to be dead. *Held*, that P., having purchased without actual notice of the chancery suit or the alleged claim of the complainants, acquired a perfect title, unless bound by the bill and the *lis pendens* therein; that defendant succeeded to all his rights, and a purchaser from him, although purchasing with knowledge of said claim, would acquire a perfect title; that, assuming all the allegations of the bill were true at its date, and that they were sufficient to have entitled the complainants, at the time the bill was filed, to a judgment requiring the then owner to receive the remainder of the purchase-price, and to convey the premises, yet, that the said complainants, if living, and, if dead, their

successors in interest, were effectually barred at the time of the execution of the contract in question from reviving and continuing said suit; and that there was no defect in defendant's title justifying plaintiff in refusing to perform.

(Argued March 5, 1889; decided June 28, 1889.)

APPEAL from judgment of the General Term of the Court of Common Pleas of the city of New York, entered upon an order made June 6, 1887, which affirmed a judgment in favor of plaintiff, entered on the report of a referee.

This action was brought to recover a payment made at the time of the execution of a contract for the sale of lands on the ground of defect in title.

In 1819 Peter Kemble owned in fee and was in possession of two lots now known as No. 56 Marion street and No. 91 Crosby street, in the city of New York. February 1, 1823, he died, having devised these lots to his five children, share and share alike. His will was duly probated. April 7, 1824, four of the devisees conveyed these lots to the fifth devisee, Mary Kemble, who recorded her deed, and subsequently (the date not appearing), took possession under her deed, remained in possession until October 5, 1854, when she conveyed the lots to James N. Paulding, who recorded his deed, immediately took possession under it, and remained in possession until August 30, 1884, when he conveyed the lots to the defendant in this action in trust, for the benefit of creditors. March 25, 1885, the defendant sold the lots by public auction to the plaintiff for $26,100. She paid down ten per cent, $2,610, and $40 auctioneer's fees, total $2,650, and contracted to pay the remainder of the price and take a deed April 15, 1885. But before that date she discovered facts which, she asserts, makes the defendant's title defective, or, at least, so doubtful that she is entitled to rescind the sale and recover the amount paid. By mutual agreement the time for the performance of the contract was extended to May sixteenth, when the plaintiff finally refused to take the title, demanded the repayment of the $2,650, and on the same day began this action.

The facts discovered were : (1) A bill filed July 31, 1836, in the late Court of Chancery, wherein John McGeer, Thomas McGeer, Peter McGeer, an infant, and Mary A. McGeer, an infant, were complainants, and Gouverneur Kemble, William Kemble, Richard F. Kemble, Mary F. Kemble and Gertrude Kemble Paulding (the wife of James K. Paulding), the five children and devisees of said Peter Kemble, were defendants ; (2) a notice of the pendency of the action, filed the same day, pursuant to 2 Revised Statutes, 174, section 43 ; (3) the joint and several answer of the defendants, verified January 28, 1837 ; (4) depositions taken in the suit in November and December, 1837, before a master ; (5) an order entered April 26, 1838, closing the proofs ; (6) an order entered May 25, 1844, substituting Charles O'Connor as solicitor for the complainants.

It is alleged in the bill that, August 13, 1819, Peter Kemble and Arthur McGeer (the father of the complainants) mutually executed an executory contract, by which Kemble agreed to sell, and McGeer to purchase, the lots for $1,200, and that September 18, 1819, the vendee paid $100, and November 20, 1819, $100, on the contract, entered into possession, and in 1819 and 1820 expended $2,000 in erecting a dwelling and making other improvements.   That to complete the dwelling McGeer borrowed $300 of Kemble upon an oral agreement that Kemble should convey the lots to McGeer and receive from him a mortgage on them as security for the loan and the remainder of the purchase-price ; and that, to secure Kemble until the deed and mortgage should be exchanged, McGeer delivered the contract for the lots to Kemble, who failed to convey them and never returned the contract.   It is further alleged that McGeer continued in possession, paying interest on the contract until May 25, 1825, when he died intestate, leaving the complainants his heirs, and only heirs-at-law, then infants of tender years ; and that shortly thereafter the defendants took, and have ever since retained, possession of the lots.

The defendants in the suit in chancery admitted in their answer the execution and delivery of a written contract of sale

and the payment of $200 thereon, but averred that the contract was to be performed within two years.    They admitted that McGeer took possession, built a house and made improvements, but averred that the improvements did not cost $2,000. It was admitted in the answer that Kemble loaned McGeer money to complete his dwelling, but it was denied that Kemble received the contract as security until a deed and mortgage could be exchanged between the parties; and it was averred that November 7, 1821, McGeer and Kemble had a settlement, and there was found due on the contract for money loaned and interest, $1,700, which McGeer, by his bond, covenanted to pay in one year, with interest, but never paid this sum or any part of it.    In short, several perfect defenses to the suit are alleged in the answer.

The referee in the case at bar found that no proceedings were taken in this equity suit between April 26, 1838 (when the proofs were declared closed), and May 25, 1844 (when Charles O'Connor was substituted as solicitor for the complainants), and that none have been taken since May 25, 1844.    He found that all of the defendants in the equity suit, except Richard F. Kemble and Mary Kemble Parrott, died prior to November 6, 1881.    He also found that about twenty years ago James N. Paulding, then the owner of the lots, made an unsuccessful effort to find the complainants, and that it does not appear what has become of them.

The plaintiff called as a witness James N. Paulding, who testified that about twenty years before the trial of this action he sold the lots by auction; but the purchaser found the papers in the chancery suit on file, and refused to take the title. Upon cross-examination he testified: "That attempt was twenty years before this sale, more or less; I should think quite that; I have not the data to give the exact date, but I should think it must be twenty years ago.    When he, the purchaser at the auction sale, came to search the title, he made this objection; I did not push it; I was astonished; *that is the first thing I knew about anything being the matter with the title;* I let it go; I, at the time, tried to find these people,

the McGeers; I employed the two men that I thought would be most likely to find out about these people; one was an agent I had then for the property; he had been agent for a long while, and knew all about it; the other was a merchant who had lived there for some time, and had known these parties; they did their best to find out about them, and reported to me that they could not be found or heard of; had not been heard of for a great many years; the last that had been heard of them was that the man had been a sort of river pirate, and the woman was a drunkard, and had been carried off to the poor house or asylum, or something or other, and had disappeared, and everybody came to the conclusion that they were dead; that was the general opinion."

Further facts appear in the opinion.

*George Woodward Wickersham* for appellant. The defendant was bound to give a good title to the property, *i. e.*, a title free from reasonable doubt. (*Fleming* v. *Burnham*, 100 N. Y. 3.) To entitle the plaintiff to the relief sought she was obliged to show that the defendant's title was not such; being the moving party suing to recover back the money she held the affirmative. (*Moser* v. *Cochrane*, 107 N. Y. 38.) A mere possibility that the title will prove defective is not sufficient to sustain the refusal of the purchaser to refuse it. (*Spring* v. *Sanford*, 7 Paige, 550; *Walton* v. *Meeks*, 41 Hun, 311; *Schermerhorn* v. *Niblo*, 2 Bosw. 161; *Moser* v. *Cochrane*, 107 N. Y. 38.) Nor does a mere claim by action establish a defect in title. It must appear that there is reasonable ground for the action and a reasonable possibility that it may be prosecuted. (*Mechanics' Bk.* v. *Culver*, 30 N. Y. 313; *Wilsey* v. *Dennis*, 44 Barb. 354; 1 Sugden on Vendors, 589.) Being brought to compel a specific performance of the contract, all the heirs-at-law of Peter Kemble were necessary parties, and the court would not proceed with the suit until they, or their heirs or representatives, in case of their death, were brought in. (1 Hoffman's Ch. Pr. 373, note 1; 1 Daniels' Ch. Pl. and Pr. 286, note 1; Sugden on Vendors [8th Am. ed.] 291, 305;

*Vest* v. *Sandford*, 1 Salk. 154; *McCotter* v. *Laurence*, 4 Hun, 107.) Any objection which might have been made in opposition to a bill of revivor before the statute could be shown in opposition to a motion to revive under the statute. (*Ins. Co.* v. *Slee*, 2 Paige Ch. 368; 1 Hoffman's Ch. Pr. 367; 2 Daniel's Ch. Pl. and Pr. 1508; Laws of 1849, chap. 239, § 2; *Beach* v. *Reynolds*, 53 N. Y. 1; *Coit* v. *Campbell*, 82 id. 509.) The right to revive a suit, as in favor of or against the heirs or representatives of a deceased party, depends upon the law as it existed at the time of his decease. (*Phillips* v. *Drake*, 1 Code Rep. 63; *Vrooman* v. *Jones*, 5 How. Pr. 369; *Spier* v. *Robinson*, 9 id. 325; Laws of 1849, chap. 439, § 2.) Courts of equity abhor stale claims, and in analogy to the statutes of limitations at law, always refused to review suits where a party had died before decree and where the application was made after such lapse of time as would have barred the original suit. (1 Story's Eq. Juris. § 1520; 1 Hoffman's Ch. Pr. 367; *Ins. Co.* v. *Slee*, 2 Paige, 368; *Lyon* v. *Park*, 55 Super. Ct. 539; *Beach* v. *Reynolds*, 53 N. Y. 1; *Coit* v. *Campbell*, 82 id. 509; *Lyon* v. *Park*, 39 Alb. L. J. 54; 18 N. E. Rep. 863.) A suit for the specific performance of a contract was, under the Revised Statutes, barred unless commenced within ten years after the cause of action accrued. (2 R. S. 302, § 52; *Bruce* v. *Tilson*, 25 N. Y. 194.) The right to revive and continue the chancery suit against the representatives of three of the defendants was, therefore, barred before the time fixed for closing the sale of this property. (Code, §§ 756, 760; *Coit* v. *Campbell*, 82 N. Y. 757; *Lyon* v. *Park*, 55 Super. Ct. R. 539; 18 N. E. R. 863.) The suit being for the specific performance, the unreasonable delay on the part of the plaintiff defeats his right. (Story's Eq. Juris. [12th ed.] 742, 750, 769, 771, 793.) The cause of action in a suit for specific performance, on the death of one of the plaintiffs, vests in the heirs-at-law of the deceased plaintiff and not in the survivors. (1 Story's Eq. Juris. § 790; 1 Sugden on Vendors, 201, 203, 205.) The failure of the parties to prosecute the chancery suit, and their abandonment of it for upwards of forty years,

so impaired the force of the *lis pendens*, that, even assuming that the suit could be revived and continued and a decree rendered in favor of the complainants, neither James N. Paulding nor a purchaser taking title through him prior to such revivor, could be affected thereby. (*Murray* v. *Ballou*, 1 Johns. Ch. 556; *Parks* v. *Jackson*, 11 Wend. 453; 2 Pomeroy's Eq. Juris. §§ 633, 640; *Watson* v. *Wilson*, 2 Dana, 406; *Clarkson* v. *Morgan*, 6 B. Monroe, 441–448; *Petree* v. *Bell*, 2 Bush. 58; *Mann* v. *Roberts*, 11 Lea [Tenn.] 57; *Bybee* v. *Summers*, 4 Oregon, 354; *Herrington* v. *McCollum*, 73 Ill. 483; *Myrick* v. *Selden*, 36 Barb. 15; Bennett on Lis Pendens, § 118; *Trimble* v. *Boothby*, 14 Ohio, 109–113; *Fox* v. *Reeder*, 28 Ohio St. 181; *Gossom* v. *Donaldson*, 18 B. Monroe, 237; 1 Story's Eq. §§ 409–411; *Kennedy* v. *Porter*, 109 N. Y. 526.) The referee erred in admitting evidence concerning plaintiff's efforts to procure a loan upon the property and of his failure to do so because of the existence of the chancery suit, and also evidence of the examination of the title and refusal to make a loan on it by another attorney. (*Moser* v. *Cochrane*, 107 N. Y. 38; 1 Sugden on Vendors, 537; 1 Greenl. on Ev. § 133.) The referee erred in holding that the existence of the chancery suit and *lis pendens*, and the fact that the title had been once rejected, were material circumstances affecting the title and value of said property, the suppression or non-disclosure of which by the defendant at the time of the sale entitled the plaintiff to refuse to complete the purchase and to recover back what she had paid. (Rawle on Covenants, 570; 2 Eq. Juris. § 901; Dart's Vendor and Purchaser [5th ed.] 97; 1 Sugden on Vendors, 200.) The order of the Supreme Court, made June 17, 1885, canceling the *lis pendens* and dismissing the suit, disposed of it as a possible cloud upon the title to the premises, and the subsequent tender to the plaintiff, in view of the offer made before the time fixed to close the title, was good and timely; the plaintiff was bound to accept, and the referee erred in refusing to so hold. (*Hartley* v. *James*, 50 N. Y. 38; *Jenkins* v. *Fahey*, 73 N. Y. 355; *Schiffer* v. *Dietz*, 83 id. 300; *Rice* v.

*Barrett,* 99 id. 403–405 ; *Mills* v. *Bliss,* 55 id. 139 ; *Niebuhr*
v. *Schrieyer,* 10 Civ. Pro. 172 ; *Crawford* v. *Whitehead,* 1 Code·
Rep. [N. S.] 345 ; *Jewett* v. *Pickersgill,* 14 N. Y. Week. Dig.
200 ; *James* v. *Shea,* 28 Hun, 74 ; *Gross* v. *Clark,* 87 N. Y.
272 ; *Bolton* v. *Jacks,* 6 Robt. 166–216.)

*W. B. Putney* for respondent. The defendant's obligation
under his contract was to give to the plaintiff a good and
marketable title, free and clear of all incumbrances and burdens·
other than such as were expressly excepted in the contract.
(*Bostwick* v. *Beach,* 31 Hun, 346 ; *Burwell* v. *Jackson,*.
9 N. Y. 541 ; *Leggett* v. *M. L. Ins. Co.,* 53 id. 395, 398 ;·
*Mills* v. *Bliss,* 55 id. 139 ; *Cockroft* v. *N. Y. & H. R. R.
Co.,* 69 id. 204 ; *M. E. Church Home* v. *Thompson,* 108·
id. 618.) As defendant stated in his terms of sale that the·
property was to be sold, subject to incumbrances, and pro--
ceeded to state what the incumbrances were, but did not.
mention the *lis pendens* and chancery suits, as matter of fact·
and law, the enumeration made excluded all matters not men-
tioned. (*Judson* v. *Wass,* 11 Johns. 525.) These facts alone·
would authorize a rescission, for " the purchaser bids on the·
assumption that there are no undisclosed defects." (*Fleming*
v. *Burnham,* 100 N. Y. 8 ; *King* v. *Knapp,* 59 id. 462–468.)
There is no such thing as abatement of an action if the cause
of action survives. (1 Abb. Dig. 5 ; Code of 1848, § 121 ;·
Code Civ. Pro. §§ 755, 757.) As the plaintiff had actual notice
of the claim set forth in the chancery suit the canceling of
the *lis pendens* would not relieve her of the effect of such
notice. (*Mills* v. *Bliss,* 55 N. Y. 137 ; *Holbrook* v. *N. J.
Z. Co.,* 57 id. 632.) The claim of the defendant that he made
the sale as assignee, and is not liable personally, is erroneous.
He executed the contract individually. (*New* v. *Nicoll,* 73·
N. Y. 127 ; *Austin* v. *Moore,* 47 id. 364 ; *Randall* v. *Dusen-
bury,* 7 J. & S. 175 ; 63 N. Y. 645 ; *Morgan* v. *Stephens,*
6 Abb. N. C. 362.)

FOLLETT, Ch. J. A pending action brought to establish title
to, or a lien upon, land does not of itself, nor does a duly

recorded notice of its pendency, make the title defective or create a lien on the land. (*Mahaiwe Bk.* v. *Culver*, 30 N. Y. 313; *Wilsey* v. *Dennis*, 44 Barb. 354; *Osbaldeston* v. *Askew*, 1 Russ. 160; *Bull* v. *Hutchins*, 32 Beav. 615; 1 Dart on Vendors [6th ed.] 564; 1 Sugden on Vendors [7th Am. ed.] 592, pp. 50, *520.) In *Bull* v. *Hutchins*, Sir JOHN ROMILLY, the learned master of the rolls, discussing this question, said: " It (the registered notice) was notice of the existence of a suit in chancery, and required all persons dealing with the property to look at the proceedings to see whether it did affect the property or not. Here the *lis pendens* was no incumbrance if Pratt had no right against the property, for it depended on the validity of his claim, for, if his claim were idle, it could not create any incumbrance on the property. A man might file a bill claiming property, alleging that sixty years ago his ancestor was seized in fee; and that, although he had sold the property, yet he had no right to do so. The plaintiff might register this as a *lis pendens*, but could anybody say that this was an incumbrance on the property, or a reason why a purchaser should not complete his purchase? All that the registration of a *lis pendens* does is to require persons to look into the claims of the plaintiff who registers it."

The record before this court is barren of evidence, except such as is contained in the papers filed in the suit in chancery, tending to show that the complainants in that suit ever had an interest in or lien upon the lots. Nevertheless, this case will be decided upon the assumptions: (1) that all of the allegations in the bill were true at its date; (2) that the facts there alleged were found by the referee in this action upon competent and sufficient evidence; and (3), that those facts were sufficient to have entitled the complainants, in 1836, when their bill was filed, to a judgment requiring Mary Kemble, then the owner of the legal estate, to receive the remainder of the purchase-price from the complainants and convey to them the lots. Were it material, the defendant might well complain of these assumptions, for while the admissions made by Mary Kemble in her answer to the bill in chancery, when she was the owner

and in possession of the lots, are evidence against the defendant, the unadmitted allegations of the complainants in their bill, on which the assumptions are based, are not evidence against him; and, besides, the assumed facts were not found by the referee.

Resting upon these assumptions, could the complainants, if living, or if dead, their successors in interest, in March, 1885, have compelled the defendants in this action to accept of the remainder of the purchase-price and convey the lots? If the answer to this question be doubtful in a legal sense, by reason of resting on a disputed state of facts, or on unascertained facts, the plaintiff was not bound to take the title. Whether, in actions brought to enforce the specific performance of executory contracts for the sale of land, courts should determine doubts respecting the title which depend solely on an unsettled question of law, and decree performance when the unsettled question is decided in favor of the validity of the title, seems not to have been definitely settled. (*Abbott* v. *James*, 111 N. Y. 673; *Osborne* v. *Rowlett*, L. R., 13 Ch. Div. 774; Fry on Spec. Per. [3d Am. ed.] 435, § 871; Pom. on Spec. Per. 281, § 202.) But it is unnecessary to enter into this controversy, for the determination of the validity or reasonableness of the vendee's doubt in the case at bar does not depend upon the decision of an unsettled legal question.

It is assumed, without deciding the question, that a vendee may recover money paid on an executory contract for the sale of land, by proving the title so doubtful that a court would not compel him to take it. Upon this question see, *Burwell* v. *Jackson* (9 N. Y. 542); *O'Reilly* v. *King* (2 Robt. 587); *Methodist E. Church Home* v. *Thompson* (20 J. & S. 321); *Bayliss* v. *Stimson* (21 id. 225); 1 Dart on Vendors (6th ed. 222). A vendee in an executory contract for the purchase of land has not an absolute right to a specific performance of the contract, but such relief is granted or refused according to the circumstances of each case. (*Peters* v. *Delaplaine*, 49 N. Y. 362; *Day* v. *Hunt*, 112 id. 191; Fry on Spec. Per. [3d Am. ed.] 10, § 25; Pom. Spec. Per. p. 4, § 4, p. 47, § 35.) The fact that all

of the heirs of Arthur McGeer were infants at the date of his death, May 25, 1825, and that the youngest did not become of full age until 1843, is not a legal excuse in an action to enforce a specific performance of the contract, for their failure to perform the contract of their ancestor; and the laches which would have barred such an action by him will bar a like action prosecuted by them. (*Havens* v. *Patterson*, 43 N. Y. 218).

Paulding having purchased without actual notice of the suit or of the alleged claim of the McGeers, he was a purchaser in good faith and acquired a perfect title unless he was bound by the bill in equity and the accompanying notice of the pendency of the suit. His grantee (the defendant herein) succeeded to all of his rights, and a purchaser from the defendant, though purchasing with notice of the suit and of the claim of the McGeers, would acquire a perfect title free from their claims. (*Bumpus* v. *Platner*, 1 Johns. Ch. 213; *Varick* v. *Briggs*, 6 Paige, 323; affirmed, 22 Wend. 543; *Griffith* v. *Griffith*, 9 Paige, 315; *Webster* v. *Van Steenbergh*, 46 Barb. 211; *Wood* v. *Chapin*, 13 N. Y. 509; 1 Story's Eq. Juris. § 410; 2 Pomeroy's Eq. Juris. § 754.) Paulding's title and the title of purchasers subsequent to him, not being weakened or affected by actual notice of the suit, it becomes important to inquire as to the effect of these papers found on file; or for how long a dormant suit and a statutory notice of its pendency binds subsequent purchasers for value and without actual notice?

The rule that a purchaser, *pendente lite*, of the subject of the litigation, if he buys in good faith and without actual notice of the claims of the litigants, is not affected by the suit pending or by the notice of its pendency, unless the suit has been prosecuted with due diligence, was first formulated by Lord BACON.

"12. No decree bindeth any that cometh in *bona fide* by conveyance from the defendant before the bill exhibited and is made no party neither by bill nor the order, but where he comes in *pendente lite* and while the suit is in full prosecution and without any color of allowance or privity of the court,

there regularly the decree bindeth; but if there were any intermission of suit or the court made acquainted with the conveyance, the court is to give order upon the special matter according to justice." (Ord. 12 in Chancery; 15 Bacon's Works, 353.) The learned editors of Bacon's Works, Spedding, Ellis and Heath, say that the main body of these ordinances must have existed previous to the time of Lord BACON in some shape or other, written or unwritten. (14 Bacon's Works, 160.) It may be safely asserted that this rule is as ancient as the earlist reported decisions of the Court of Chancery, and it continued to be the rule of the English courts until 1839. (*Preston* v. *Tubbin,* 1 Vern. 286; *Sorrell* v. *Carpenter,* 2 P. Wms. 482; *Kinsman* v. *Kinsman,* Taml. 399; 1 Russ & M. 617; 2 Sugd. on Vendors [7th Am. ed.] 544, 1045*, p. 24; 2 Fonbl. on Eq. 153.) In 1839 it was enacted (Chap. 11 of 2 and 3 Vict., amended by chaps. 15, 18 and 19 Vict.) that a *lis pendens* should not bind a purchaser or mortgagee *pendente lite* without express notice thereof, unless a notice of the pendency of the suit should be registered, and that the registered notice should become void at the expiration of five years unless it should be re-registered. Since the passage of this statute the effect upon purchasers and incumbrancers, *pendente lite,* of a lack of diligence in prosecuting suits, has ceased to be, in England, a living question, and only occasional reference to the subject will be found in modern English law books. We do not find that this rule has ever been questioned in this state; but, on the contrary, it has been approvingly cited and applied. (*Murray* v. *Ballou,* 1 Johns. Ch. 566; *Hayden* v. *Bucklin,* 9 Paige, 512; *Myrick* v. *Selden,* 36 Barb. 15; Will. Eq. Juris. 251.) The courts of other states have asserted and followed the rule. (*Herrington* v. *McCollum,* 73 Ill. 476, 483; *Watson* v. *Wilson,* 2 Dana, 406; *Clarkson* v. *Morgan,* 6 B. Monroe, 441, 448; *Debell* v. *Foxworthy,* 9 Id. 228; *Erhman* v. *Kendrick,* 1 Metc. [Ky.] 146; *Petree* v. *Bell,* 2 Bush. [Ky.] 58; *Ashley* v. *Cunningham,* 16 Ark. 168; *Mann* v. *Roberts,* 11 Lea [Tenn.] 57; *Bybee* v. *Summers,* 4 Oregon, 354.)

The text writers state the rule as laid down in the cases cited. (2 Pom. Eq. Juris. §§ 634, 640; Wade on Notice, §§ 357, 359; Bennett on Lis Pendens, § 418.)

The right of a plaintiff to revive and continue an action against the successors in interest of a deceased defendant may be lost by long delay in making the application, and especially if the successors are purchasers in good faith and if the condition and value of the property have greatly changed, and the only witnesses by which the facts in issue could be established are dead. (*Coit* v. *Campbell*, 82 N. Y. 509; *Lyon* v. *Park*, 111 id. 350.) For sixty-one years prior to April 15, 1885, the date fixed for the performance of the contract of sale, the defendant and his grantors had been in the exclusive possession of the lots, claiming to own the entire estate by virtue of recorded deeds, which, in terms, conveyed the entire estate. No move has been made in the chancery suit adverse to the defendants therein since April 26, 1838, sixteen years before Paulding became a purchaser in personal good faith, and more than forty-six years before the plaintiff in this action purchased. Gertrude Kemble Paulding, one of the defendants, died May 25, 1841, forty-four years before the plaintiff's purchase; her husband died April 6, 1860, twenty-five years before the plaintiff's purchase; Gouverneur Kemble died September 18, 1875, nearly ten years before the plaintiff's purchase, and William Kemble died November 5, 1881, nearly four years before the plaintiff's purchase. It is apparent that the condition and value of the property have greatly changed. It was contracted to be sold in 1819 for $1,200; and it sold to the plaintiff for $26,100. It is alleged in the bill, and is conceded in the answer in the chancery suit, that the business between Arthur McGeer, the vendee, and Peter Kemble the vendor, was transacted by William Kemble, who is dead. On the 25th day of March 1885, the complainants in the suit in chancery, if living, and if dead, their successors in interest, were, by well settled rules of law, effectually barred from reviving and continuing their suit against the defendant in this action, who then had a good title to the lot; and the plaintiff had no valid reason, in

law or in equity, for failing to perform her contract. Having held that the suit in chancery, and the papers filed in connection therewith, created no defect in the title, or lien upon the property, it is unnecessary to discuss the failure of the defendant to disclose their existence to the purchaser.

The judgment should be reversed and a new trial granted, with costs to abide the event.

All concur, except BRADLEY and HAIGHT, JJ., who dissent. Judgment reversed.