## Department of Public Assistance v. Kovacs, Admr., et al.

*Joseph W. Ray*, Deputy Attorney General, for Department of Public Assistance.

*Anthony Cavalcante*, for defendants.

CARR, J., November 27, 1942.—The Department of Public Assistance of the Commonwealth of Pennsyl-

vania brought this bill in the lifetime of an indigent recipient of public assistance to have set aside to the extent necessary to satisfy its claim a deed for land in this county made by him to his children, alleging that the conveyance lacked a fair consideration. Preliminary objections that the suit should have been brought at law were overruled, after which defendant grantees filed an answer admitting the material averments of the bill but averring that the property was transferred subject to record liens amounting to more than its value, and that the grantor had conveyed it "because he was insolvent" and "unable to pay his creditors" in order "to permit the said defendants to protect the said premises and the furnishings therein as a home for their said father . . . and mother . . . both indigent and without resources and income".

During the pendency of the proceeding defendant grantor died, but until more than a year after his death an administration was not raised and the suit was not indexed in the judgment index of the county. No other action to continue the lien of the debt of decedent under the terms of the Fiduciaries Act was ever instituted.

## Discussion

Under the terms of the Uniform Fraudulent Conveyance Act of May 21, 1921, P. L. 1045, 39 PS §351 et seq., a conveyance of property by an insolvent debtor is a fraud upon creditors if made without a fair consideration. In this record there is no evidence of consideration at all. The grantees did not assume or become liable in any manner for the payment of any of the grantor's indebtedness, nor is there anything to show that such an undertaking on their part would have had any value apart from the property conveyed.

The only evidence bearing upon the intention of the parties was that given by the two sons. Thomas Batya, Jr., testified that his father made the conveyance be-

cause "he figures he wasn't going to stay very long, and he turned it over to us. That's the only reason he done it." John Batya testified that the conveyance was made "In order that we paid his debt out, because he was old and had no means of paying it out, so we took it over and tried to pay it out as best we can." This falls far short of establishing an agreement on the part of the grantees whereby the Commonwealth could have proceeded against them or against the land in their hands: see Shakely, for use, v. Guthrie, Admr., et al., 2 Pa. Superior Ct. 414, and cases there collected.

The difficulty with the Commonwealth's case is that its cause of action has abated in consequence of its failure to continue the lien of its claim against the land of decedent beyond one year after the date of his death. Section 15(a) of the Fiduciaries Act of June 7, 1917, P. L. 447, as amended by the Act of June 7, 1919, P. L. 412, 20 PS §521, provides that with certain exceptions not here relevant "No debts of a decedent . . . shall remain a lien on the real estate of such decedent longer than one year after the decease of such debtor, unless within said period an action for the recovery thereof be brought against the executor or administrator of such decedent; and such action shall be indexed, within said period, against the decedent and such executor or administrator, in the judgment index in the county in which such action is brought, and also in the county in which the real estate sought to be charged is situate, and be duly prosecuted to judgment . . ."

Assuming, as it seems proper to do, that the present proceeding in equity is "an action for the recovery" of the claim within the meaning of the Fiduciaries Act (see Hook et al. v. McCune, 184 Pa. 292), still decedent's administrator was not made a party to it or even raised up within the year, and it was never indexed in the judgment index against either decedent or his administrator. As a result of this omission the

Commonwealth's lien was lost and its right to proceed against decedent's realty ceased to exist: Commonwealth v. Smith et al., 344 Pa. 381; Central-Penn National Bank v. Culp et al., 320 Pa. 358.

Relying upon the Act of June 15, 1871, P. L. 387, 17 PS §1908, counsel for the Commonwealth argues that an action to nullify a fraudulent conveyance is sufficient of itself to establish a lien upon the real estate involved and that, such action having been brought against Thomas Batya in his lifetime, it created a lien that existed at the time of his death and rendered superfluous a proceeding to obtain a lien under the terms of the Fiduciaries Act. The cited provision of the Act of 1871 is as follows:

"That when any proceedings in lunacy, habitual drunkenness, to revive and continue the lien of debts against a decedent's real estate by bill or otherwise, or a petition to declare void any agreement, deed or other paper or proceeding conveying or vesting title to real estate in this commonwealth, or any other proceeding by which purchasers of real estate would be deemed to have had constructive notice, shall have been commenced in any of the courts of this commonwealth, it shall be the duty of the several prothonotaries and clerks to enter the same upon the judgment indexes or dockets of said courts, and to certify the same as liens, in any certificate of liens that they may be required to make by virtue of their office."

It seems a sufficient answer to this argument to point out that the proceeding was never entered by the prothonotary in the judgment index against any of the defendants. Its entry in the ejectment and miscellaneous index made it constructive notice to all persons of the matters contained in the record: Act of June 19, 1913, P. L. 532, sec. 3, 17 PS §1912. It thereby became a lis pendens, warning prospective purchasers of the property that the controversy had been taken under

consideration by the court and that a judgment might result that would overreach intermediate alienation. A lis pendens does not, however, create a lien or in any respect alter the status quo. It has no application as between the parties to the action themselves. All that it does is to require third persons to look into the claim before intermeddling. The entire doctrine of lis pendens is expressed in the maxim that pendente lite nihil innovetur: Hayes v. Nourse, 114 N. Y. 595, 22 N. E. 40.

Nor would the entry of the proceeding in the judgment index have made the claim a lien. The complete title of the Act of 1871 is, "An Act providing for the entry of certain proceedings on the judgment indexes of the several courts of this commonwealth", and its entire object is to facilitate notice of the lis pendens. There is nothing in its language indicating any intention summarily to invest such claims with the actual character of liens. The provision that the prothonotary is to certify such proceedings "as liens" in certificates of liens that he may be required to make by virtue of his office means only that he is to certify them as though they were liens and in the same manner in which liens are required to be certified.

It is equally incorrect to think that a lien is created by the beginning of an action after the debtor's death in compliance with the Fiduciaries Act. It is the happening of the death of the debtor that gives his debts not of record the status of liens upon his real estate. The subsequent action required within the year is for the purpose of continuing the lien that has already attached. Thus it may be seen that the only lien the Commonwealth ever had upon the debtor's property was that created at his death by operation of law. Since it has been allowed to expire, the present proceeding fails: Commonwealth v. Smith et al., supra. . . .